DONOVAN, J.
{¶ 1} This matter is before the Court on the April 17, 2017 Notice of Appeal of David A. Parker. Parker appeals from the trial court's March 17, 2017 journal entry granting the motion for summary judgment of ACE Hardware Corporation, McAuliffe's ACE Hardware, and McAuliffe's Rental LLC (collectively, "ACE"). We hereby affirm the judgment of the trial court.
{¶ 2} On March 20, 2015 Parker filed a complaint against ACE, Frederick Stevens, the Coleman Company Inc., and John Does 1-10, in the Franklin County Court of Common Pleas. In Count 1, Parker *300 alleged negligence against Stevens; in Count 2, he alleged negligence against ACE; in Count 3, he alleged negligent misrepresentation against ACE; in Count 4 he alleged breaches of express and implied warranties against all defendants; and in Count 5, he alleged "a combined claim for damages under both strict liability and statutory strict products liability under both Ohio common law and Ohio Revised Code §§ 2307.71 -80" against all defendants except Stevens. On January 15, 2016, Parker dismissed all claims against Coleman and the products liability claim in Count 5. On March 16, 2016, Parker dismissed his claims against Stevens.
{¶ 3} The matter was subsequently transferred to Champaign County on Parker's request and refiled on August 19, 2016. The complaint sets forth the following allegations: Parker and Stevens became friends in 2010-2011, and when Stevens had surgery in 2013, Parker helped Stevens by clearing his property of brush and performing other chores. On September 8, 2013, after a significant amount of brush had been consolidated into a large pile, Stevens asked Parker to "stop at the hardware store to purchase five cans of kerosene * * * to be used to ignite and burn the brush pile."
{¶ 4} After having his chain saw serviced and repaired at McAuliffe's ACE Hardware, Parker inquired if he could also purchase kerosene for a brush fire, and a male employee directed Parker to "a female clerk down another aisle in the store and told [Parker] that she would assist him." Parker asked the female clerk for kerosene, and she inquired as to his intended use of the product. Parker advised the clerk that he intended to "start a large brush fire about the size of a truck, and needed kerosene to start the fire." The clerk then directed Parker to a product that she identified as kerosene, and he purchase the product. The product was in fact Coleman Camp Fuel, and when Parker ignited the brush pile with the fuel, "vapors were ignited and quickly exploded and engulfed [Parker] in flames. [Parker] was severely burned over 90% of his body."
{¶ 5} On September 7, 2016, the "Motion of Defendants McAuliffe ACE, McAuliffe Rental LLC and ACE Hardware Corporation for Summary Judgment" was filed. ACE therein asserted that "Parker cannot prevail under his various legal theories because Plaintiff was explicitly warned not to use the product in question for the purpose he intended, Plaintiff ignored that warning and Plaintiff assumed the risk of his own unsafe conduct." The motion provides that "there can be no dispute that McAuliffe's, through warnings displayed on the Coleman's product, specifically warned Plaintiff of the dangers involved in using Coleman's Camp Fuel in the manner Plaintiff contemplated using it."
{¶ 6} The motion provides that Parker "cannot establish reasonable reliance on McAuliffe's alleged statements when the product's label directly contradicted any assertion that the Coleman's Camp Fuel could be used as a fire starter-a fact Plaintiff could * * * have learned by simply reading the label's clear, unambiguously stated warnings which appeared on the product."
{¶ 7} The motion argues that Parker "assumed the risk of injury in using a product to start a fire while he was in close proximity to the fire." According to the motion, there "is no question that fire is ipso facto dangerous, and presents a danger that is open and obvious, and not latent." ACE argued that Parker's use of a product "he assumed to be a fire accelerant in starting a fire was a straightforward, ordinary risk."
*301 {¶ 8} The motion provided that Parker's common law breach of warranty claims "have been abrogated by Ohio's enactment of the Ohio Products Liability Act." The motion asserts that there "is no allegation in Plaintiff's Complaint or evidence that Plaintiff provided any pre-suit notice to McAuliffe's on his breach of warranty claim. Without any such evidence, Plaintiff's breach of warranty claims fail for want of pre-suit notice." Also on September 7, 2016, the depositions of Parker and Stevens were filed in conjunction with the motion for summary judgment.
{¶ 9} On December 19, 2016, Parker filed a "Memorandum Contra Defendants ACE Hardware and McAuliffe's Motion for summary Judgment and Plaintiff's Cross Motion for Summary Judgment." Parker asserted that Ace owed him duties to advise him as follows:
* * *(a) where the product he requested was located, (b) that it was fit for the purpose which he told them it was going to be used when they asked him what he was using it for, and (c) that the product they sold him was suitable to be used to start a brush pile fire, which they also advised him following his response to the question about what he was using it for.
{¶ 10} Regarding negligent misrepresentation, Parker asserted that the fact that "the store clerk in this case failed to use reasonable care in communicating information to Mr. Parker is established by the only evidence presented on the claim. Summary judgment for Mr. Parker is required since there is no evidence to the contrary that she made the statements which were provably false." Regarding his failure to warn claim, Parker argued that once ACE and McAuliffe's "admittedly assume[d] a duty to advise customers about products and services, they are indeed liable for failing to warn them and for incorrectly advising them and providing false information."
{¶ 11} Parker argued that he did not assume the risk of injury because starting "a fire with kerosene is a safe activity, as opposed to starting one with a highly volatile camp fuel." Parker argued that there "was no basis for him to assume the risk of something about which he had no knowledge, a prerequisite to assuming the risk." Parker attached his affidavit.
{¶ 12} On December 27, Defendants filed a reply brief in support of summary judgment, as well as a brief in opposition to Parker's motion for summary judgment. On January 5, 2017, Parker opposed the motion to strike his affidavit, as well as a reply to Defendants' motion for summary judgment.
{¶ 13} In granting summary judgment in favor of ACE, the trial court noted that Parker's "entire case * * * is premised on the assumption that he would not have been injured when he started the fire if the cans he purchased at McAuliffe's had contained kerosene, instead of Coleman Camp Fuel." Regarding Parker's negligence claim, the court noted that the "existence of a duty depends on the foreseeability of harm." Accordingly, the court noted, it "must determine whether a reasonably prudent person would have anticipated Ms. Reigle's misidentification of Coleman Camp Fuel as kerosene was likely to result in injury."
{¶ 14} The court cited Parker's deposition testimony acknowledging that two photographs of Coleman Camp Fuel accurately depict the product he purchased on September 8, 2013, that the labels reflect that the cans were not labeled as containing kerosene and further warn that "Coleman Camp Fuel should not be used in kerosene, alcohol, or lamp/stove oil appliances." The court concluded that had Parker read the cans before proceeding to the *302 checkout counter, he would have learned that they did not contain kerosene. According to the court, Parker's "purported reliance on Ms. Reigle's expertise and professionalism is misplaced since the cans themselves clearly and unequivocally inform the purchaser that the contents were Coleman Camp Fuel, and not kerosene." The court concluded that it "cannot articulate the duty breached when Ms. Reigle allegedly identified Coleman Camp Fuel as kerosene," and that "ACE and McAuliffe's are entitled to summary judgment on the negligence claim, to the extent that it can be read as alleging the breach of duty owed to [Parker.]"
{¶ 15} The court then noted as follows:
After reviewing [Parker's] complaint, the Court also believes that his negligence claim can be construed as alleging the following on the part of defendants: (1) failure to warn; (2) negligent misrepresentation; and (3) breach of implied warranty of fitness for a particular purpose. [Parker] has pled the latter two theories in his complaint. Since the allegations can also be construed as alleging failure to warn, the Court will also analyze the negligence claim in this fashion.
{¶ 16} Citing Parker's deposition, the court noted that it "is * * * undisputed that the warnings on the can inform the user that Coleman Camp Fuel is not to be used as a fire starter" and that "fuel vapors are invisible, explosive, and can be ignited by ignition sources many feet/meters away."
{¶ 17} The court noted that it "is also undisputed that [Parker] never read the warnings on the can prior to starting the fire. During his deposition, [Parker] admitted that the front of the can urges the user to 'carefully read all warnings on the back panel.' " According to the court, Parker "also admitted that he would have learned that the product was not kerosene and would not have used it to start the fire, if he would have read the labeling on the can." The court concluded that given "these circumstances, the only reasonable conclusion is that [Parker] cannot prevail on any 'failure to warn' claim."
{¶ 18} Regarding Parker's claim of negligent misrepresentation, the court concluded that ACE was entitled to summary judgment, since "the cans were labeled 'Coleman Camp Fuel,' and not 'kerosene.' It is also undisputed that either [Parker] or Ms. Reigle could have easily learned that the cans did not contain kerosene by simply looking at them. Since the true facts were available to both, any reliance on Ms. Reigle's statements was misplaced and does not create a material issue of fact."
{¶ 19} Finally, the court noted that Parker "has also alleged that the defendants breached both express and implied warranties, including the warranty that the product was suitable for its intended use." The court further noted, however, that Parker "does not articulate an express warranty allegedly made by Ms. Reigle at the time of the transaction. Thus, any warranty claim against ACE and McAuliffe's must be premised on the breach of an implied warranty." The court determined that since Parker "does not contend that the purchased goods, (i.e., Coleman Camp Fuel), were not suitable for use in Coleman Liquid fuel appliances, such as camping stoves and lanterns," his "breach of warranty claim does not arise under UCC § 2-314 (merchantability), but instead can only arise under UCC § 2-315 (fitness for particular purpose)."
{¶ 20} The court concluded that Parker "allegedly asked Ms. Reigle where he could find kerosene. In response, she allegedly showed him Coleman Camp Fuel and mistakenly identified this product as kerosene." The court noted that Parker "never *303 asked Ms. Reigle what product she would recommend to ignite a large brush pile. As such, he was not relying on her skill and expertise to select the appropriate goods for fire starting." Instead, Parker "asked Ms. Reigle where he could find a particular product and was sent in the wrong direction. Therefore, any claim alleging breach of [an] implied warranty of fitness for a particular [purpose] must fail, and ACE and McAuliffe's are entitled to summary judgment on [Parker's] Warranty claims."
{¶ 21} Parker asserts one assignment of error herein as follows:
THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT TO DEFENDANTS AND DISMISSING ALL CLAIMS AS A MATTER OF LAW.
{¶ 22} Parker asserts that he "was never warned by anyone, including the defendants' store clerk, not to use the product which they told me was kerosene on the day that they sold it to me." According to Parker, the trial court "failed to properly address the duty issue, the first element of a negligence claim."
{¶ 23} Parker asserts as follows:
The trial court erred by not properly evaluating and deciding the negligence claims. ACE and McAuliffe's owed and breached duties to advise Mr. Parker as a customer (a) where the product he requested was located, (b) that it was fit for the purpose which he told them it was going to be used when they asked, (c) that the product they sold him was suitable to be used to start a brush pile fire, which they also advised him following his response to the question about what he was using it for, (d) that what they sold him was actually camp fuel and not kerosene, and (e) failed to warn him that it should not be used to start a fire. Even under the most liberal construction of the term "duty," the defendants clearly owed him a duty of ordinary care to provide accurate information and advice once they undertook to provide him with advice. Their breach of these duties constitutes negligence under Ohio law as a matter of law which therefore entitles Mr. Parker to summary judgment on the negligence claims.
{¶ 24} Parker asserts that he did not realize that he had been sold a "highly volatile camp fuel instead of kerosene," and there "was no basis for him to assume the risk of something about which he had no knowledge, a prerequisite to assuming the risk." Finally, Parker notes that ACE and McAuliffe's "argue that the claims for breach of warranty for merchantability and fitness for a particular purpose also fail because Mr. Parker supposedly failed to give pre-suit notice." Parker asserts that "these claims are not preempted by the product liability statute, therefore they are not eliminated as a matter of law as defendants assert because ACE and McAuliffe's are not manufacturers subject to product liability claims."
{¶ 25} ACE and McAuliffe's respond that they "produced evidence to demonstrate the absence of material fact regarding the breach of duty of care," and that Parker "failed to respond with competent evidence to show otherwise. Rather, [Parker] relied upon conclusory allegations and unfiled deposition testimony."
{¶ 26} As this Court has previously noted:
Summary judgment is appropriate when the moving party demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion when viewing the *304 evidence most strongly in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party. Hudson v. Petrosurance, Inc., 127 Ohio St.3d 54, 2010-Ohio-4505, 936 N.E.2d 481, ¶ 29 ; Sinnott v. Aqua-Chem, Inc., 116 Ohio St.3d 158, 2007-Ohio-5584, 876 N.E.2d 1217, ¶ 29. When reviewing a summary judgment, an appellate court conducts a de novo review. Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). "De Novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." Brewer v. Cleveland City Schools Bd. of Edn., 122 Ohio App.3d 378, 383, 701 N.E.2d 1023 (8th Dist.1997), citing Dupler v. Mansfield Journal Co., 64 Ohio St.2d 116, 119-20, 413 N.E.2d 1187 (1980). Therefore, the trial court's decision is not granted deference by the reviewing appellate court. Brown v. Scioto Cty. Bd. Of Commrs., 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993).
Huntington Natl. Bank v. Payson , 2d Dist. Montgomery No. 26396, 2015-Ohio-1976, 2015 WL 2452302, ¶ 14.
{¶ 27} We initially note that "when the Ohio General Assembly enacted the current version of the [Ohio Products Liability Act, R.C. 2307.71 et seq. ], it abrogated all common law claims relating to product liability causes of actions." Evans v. Hanger Prosthetics & Orthotics, Inc. , 735 F.Supp.2d 785, 795 (N.D.Ohio 2010). As further noted in Evans :
Specifically, the General Assembly added a section stating that " Sections 2307.71 to 2307.80 of the Revised Code are intended to abrogate all common law product liability causes of action." R.C. 2307.71(B). Furthermore, the OPLA applies to "recovery of compensatory damages based on a product liability claim," as well as "[a]ny recovery of punitive damages or exemplary damages in connection with a product liability claim." R.C. 2307.72(A) - (B). See also Delahunt v. Cytodyne Techs., 241 F.Supp.2d 827, 842 (S.D.Ohio 2003).
{¶ 28} The OPLA defines a "product liability claim" as follows:
"Product liability claim" means a claim or cause of action that is asserted in a civil action pursuant to sections 2307.71 to 2307.80 of the Revised Code and that seeks to recover compensatory damages from a manufacturer or supplier for death, physical injury to person, emotional distress, or physical damage to property other than the product in question, that allegedly arose from any of the following:
(a) The design, formulation, production, construction, creation, assembly, rebuilding, testing, or marketing of that product;
(b) Any warning or instruction, or lack of warning or instruction, associated with that product;
(c) Any failure of that product to conform to any relevant representation or warranty.
R.C. 2307.71(A)(13).
{¶ 29} R.C. 2307.71 defines a "supplier" in relevant part as: "(i) A person that, in the course of a business conducted for the purpose, sells, distributes, leases, prepares, blends, packages, labels, or otherwise participates in the placing of a product in the stream of commerce." We conclude that ACE is a supplier.
{¶ 30} R.C. 2307.78(A) provides in relevant part:
* * * a supplier is subject to liability for compensatory damages based on a product liability claim only if the claimant establishes, by a preponderance of *305 the evidence, that either of the following applies:
(1) The supplier in question was negligent and that, negligence was a proximate cause of harm for which the claimant seeks to recover compensatory damages;
(2) The product in question did not conform, when it left the control of the supplier in question, to a representation made by that supplier, and that representation and the failure to conform to it were a proximate cause of harm for which the claimant seeks to recover compensatory damages. A supplier is subject to liability for such a representation and the failure to conform to it even though the supplier did not act fraudulently, recklessly, or negligently in making the representation.
{¶ 31} In other words, the OPLA imposes liability based upon a supplier's negligence or misrepresentation. In Counts 2 and 3, Parker alleged negligence, negligent failure to warn, and negligent misrepresentation, and we conclude these are product liability claims. As noted by the Southern District of Ohio, Eastern Division:
* * * These common law claims have all been abrogated by the OPLA. See Hempy v. Breg, Inc., No. 2:11-CV-900, 2012 WL 380119 at *3 (S.D.Ohio Feb. 6, 2012) (concluding that claims for negligence and breach of warranty constitute common law product liability claims); Bowles v. Novartis Pharm. Corp., No. 3:12-CV-145, 2013 WL 5297257, at *7 (S.D.Ohio Sept. 19, 2013) (concluding that claims for negligent manufacture and negligent failure to warn were subject to the OPLA); Miller v. ALZA Corp., 759 F.Supp.2d 929, 943 (S.D.Ohio 2010) ("Further, common law warranty claims have also been abrogated by the OPLA...."); Miles, 612 F.Supp.2d at 924 (concluding that "implied warranty claims (both merchantability and fitness for a particular purpose) ... constitute common law products liability claims subject to preemption by the OPLA.").
Hendricks v. Pharmacia Corp. , S.D.Ohio No. 2:12-CV-00613, 2014 WL 2515478, *4 (June 4, 2014) ; see also Amendola v. R.J. Reynolds Tobacco Co. , 198 F.3d 244, 1999 WL 1111515, *2 (6th Cir.1999) (holding in part that plaintiff's negligent misrepresentation claim is governed by the OPLA). Since the OPLA provided the exclusive remedy for the claims in Counts 2 and 3, we conclude that ACE was entitled to summary judgment as a matter of law on those counts.
{¶ 32} In Count 4, Parker alleged breach of express and implied warranties, and as noted above, the trial court addressed the breach of warranties claims pursuant to " R.C. 1302.27(A) ( UCC § 2-314 )" and " R.C. 1302.28 ( UCC § 2-315 )." In Miller v. ALZA Corp. , 759 F.Supp.2d 929 (S.D.Ohio 2010), the plaintiff argued that his breach of warranty claims were "statutory warranty claims under Ohio's codification of the Uniform Commercial Code ('UCC') in O.R.C. Chapter 1302," and that those claims were accordingly not abrogated by the OPLA, in reliance upon Miles v. Raymond Corp. , 612 F.Supp.2d 913, 924-25 (N.D.Ohio 2009). Miller , at 943.
{¶ 33} The Southern District of Ohio analyzed the issue as follows:
Here, Defendant argues that the allegations in the Complaint do not support Plaintiff's contention that the warranty claims are asserted under R.C. Chapter 1302. Defendants point out that the "Complaint makes no reference-expressly or impliedly-to the UCC or its codification in Ohio [.]" (Doc. 48). The Court agrees with Defendants that nothing in Plaintiff's Complaint indicates *306 that the warranty claims are being pursued under R.C. Chapter 1302. Not only does the Complaint not cite Ohio's codification of the UCC, Plaintiff's Response to Defendants' Motion fails to identify the specific UCC sections under which the warranty claims are being pursued. (Doc. 47).
This district has dealt with the failure to specifically state whether warranty claims are asserted under the UCC. In Miles, the court seemingly allowed the UCC claims to stand, only to dismiss them as being time-barred under R.C. 1302.98. Miles , 612 F.Supp.2d at 926-27, n. 13. In Donley [v. Pinnacle Foods Group , LLC, S.D.Ohio No. 2:09-CV-540, 2009 WL 5217319 (Dec. 28, 2009) ], however, the court stated:
Plaintiff's Complaint ... contained no reference to the Uniform Commercial Code, or to the two statutes he cites in his memorandum contra [i.e., O.R.C. §§ 1302.27 and 1302.28 ]. The defendants are again entitled to "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.Pro. 8(a)(2). To the extent that Plaintiff now alleges that he is (and always was) suing under the Uniform Commercial Code, his Complaint failed to state such claims. To the extent that Plaintiff was suing under common-law theories of product liability, Defendants' unrefuted argument that these theories have been statutorially [sic] abrogated is correct. Plaintiff is free to move to amend his complaint to add claims arising under the Uniform Commercial Code, but he has, as yet, not stated any. The common law product liability claims he did state are barred as a matter of law.
Donely , 2009 WL 5217319, at *4.
Here, Plaintiff fails to cite any portion of R.C. Chapter 1302 in the Complaint (Doc. 1) or in the Response to Defendants' Motion. (Doc. 46). In fact, in Plaintiff's Response, Plaintiff merely asserts in conclusory fashion that the claims are UCC claims, not common law claims. Based on Donley, and in light of Plaintiff's conclusory arguments in attempting to establish that the warranty claims are UCC claims, the Court finds that summary judgment is proper.
Miller , at 943-44 (further granting summary judgment as a matter of law in favor of ALZA Corp. with regard to Miller's negligence and negligent misrepresentation claims).
{¶ 34} As in Miller , Parker failed to cite any portion of R.C. Chapter 1302 in his complaint or in his response to ACE's motion for summary judgment. Like Fed.R.Civ.Pro. 8, Civ.R. 8(A)(1) also requires "a short and plain statement of the claim showing that the party is entitled to relief," and we conclude that Parker's breach of warranty claims are not UCC claims.
{¶ 35} In his response to ACE's motion for summary judgment and again in his brief, Parker cited to Wright v. Harts Machine Services, Inc., 2016-Ohio-4758, 69 N.E.3d 63 (6th Dist.) in support of breach of warranties claims. Therein, the riders of a self-assembled trike asserted claims of breach of implied warranties against Harts Machine Services, Inc. ("Harts"), and the Sixth District affirmed the trial court's decision that the claims were not abrogated by OPLA, which as noted above is limited to "products liability claims" for compensatory damages from a manufacturer or supplier. The Sixth District determined that "Harts has already litigated this issue, leading the trial court to find that it is not a manufacturer or supplier." Id., ¶ 28. Since ACE is a supplier, we conclude that Wright does not support Parker's assertion that his claims are not abrogated by the OPLA.
*307 {¶ 36} We finally conclude, as in Miller, and pursuant to R.C. 2307.71(B), that summary judgment on Parker's claims of negligence, negligent failure to warn, negligent misrepresentation, and breach of warranties is proper as a matter of law. Accordingly, Parker's assigned error is overruled, and the judgment of the trial court is affirmed.
HALL, J., concurs.