[Cite as *Henderson v. Speedway, L.L.C.*, 2018-Ohio-4605.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 106737**

**BRANDON J. HENDERSON**

PLAINTIFF-APPELLANT
CROSS-APPELLEE

vs.

**SPEEDWAY L.L.C.**

DEFENDANT-APPELLEE
CROSS-APPELLANT

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Rocky River Municipal Court
Case No.16 CVF 1521

**BEFORE:** Jones, J., E.A. Gallagher, A.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** November 15, 2018

**ATTORNEY FOR APPELLANT/CROSS-APPELLEE**

Al A. Mokhtari
Henderson Mokhtari & Weatherly Co.
713 S. Front Street, Suite 212
Columbus, Ohio 43206


**ATTORNEYS FOR APPELLEE/CROSS-APPELLANT**

Nicholas Pavel Resetar
Bradley A. Wright
Roetzel & Andress Co., L.P.A.
222 S. Main Street, Suite 400
Akron, Ohio 44308


LARRY A. JONES, SR., J.:

{¶1} This case involves whether gasoline Brandon Henderson ("Henderson") purchased at a Speedway gas station and put into his car was contaminated by water and caused damage to his vehicle. The trial court in this matter granted defendant-appellee/cross-appellant Speedway L.L.C.'s motion for summary judgment. Plaintiff-appellant/cross-appellee Henderson appeals the trial court's decision. Speedway's cross-appeal challenges the trial court's denial of its motion for sanctions. For the following reasons, we affirm.

**Procedural History and Facts**

{¶2} On April 19, 2016, Henderson went to the Speedway gas station in Bay Village to fill up his 2012 Audi. He put 16.721 gallons of fuel into the tank and drove his car to his fiancée's house, where he left it while he went on vacation. He tried to start it a week later, but the car would not start, and he had it towed to the dealership, Audi Bedford.

{¶3} Service technician Douglas Patterson ("Patterson") worked on the car. Patterson noted that the vehicle had 50,143 miles on it and would not start. According to the invoice

Patterson generated, the car had been damaged from water mixed with gasoline. Neither Audi Bedford nor Henderson retained a sample of the fuel or the damaged auto parts long enough for a third-party inspection.

{¶4} Henderson contacted Speedway and asked that he be reimbursed for the damage to his car. Speedway denied the claim, finding that its gasoline was not the cause or source of the mechanical problems and declined to assume responsibility. Henderson requested Speedway reevaluate the incident. Speedway did so, and again denied responsibility for the damage to Henderson's vehicle.

{¶5} In September 2016, Henderson filed a complaint against Speedway in Rocky River Municipal Court alleging breach of contract, negligence, and violations of the Ohio Products Liability Act ("OPLA") and the Ohio Consumer Sales Practices Act ("CSPA").

{¶6} On February 6, 2017, Henderson filed a notice of deposition to depose 11 Speedway witnesses. In response, Speedway moved for a protective order, arguing that only 2 of those 11 witnesses had knowledge of discoverable matter. On February 23, 2017, Henderson filed a combined motion to compel, memorandum in opposition to Speedway's motion for protective order, and motion to extend the discovery deadline. Also in February, Speedway filed a counterclaim against Henderson for spoilation of evidence.

{¶7} The trial court set the motions for a March hearing; the hearing was held in front of a magistrate, but not on the record. The magistrate issued a journal entry after the hearing that stated, in part: "The hearing was had and the [p]arties have agreed that the Discovery deadline shall be extended an additional 60 days and the parties have also agreed that the depositions of the two witnesses that Defendant plans to call at trial shall be taken during that 60 day period."

{¶8} In May, the magistrate held a pretrial and set a discovery deadline of July 30, 2017,

and a dispositive motion deadline of August 30, 2017.

{¶9} On August 17, 2017, Speedway moved for sanctions pursuant to Civ.R. 37 due to spoilation of the allegedly contaminated gasoline. On August 18, Speedway moved for summary judgment.

{¶10} On August 31, Henderson moved for an extension of time to respond to Speedway's motions. On September 8, Henderson filed an amended motion for an extension of time to respond to Speedway's motion for summary judgment or, in the alternative, a memorandum in opposition to the motion for summary judgment. In this filing, Henderson argued that the court had yet to rule upon his motions seeking "complete answers to interrogatories and requests for production of documents from Speedway, as well as discovery depositions of certain Speedway employees and agents." The trial court granted Henderson's request for an extension and ordered that his motion opposing summary judgment was due by September 18, 2017.

{¶11} On September 19, 2017, the day after the response deadline, Henderson filed a second amended motion for extension of time to respond to Speedway's motion for summary judgment or, in the alternative, a memorandum in opposition to Speedway's motion for summary judgment. Henderson's second amended motion contained an affidavit signed by his counsel in support of his contention that additional discovery was needed in order to oppose summary judgment.

{¶12} The magistrate set the motions for a hearing and a hearing was held on all pending motions. The magistrate subsequently granted Speedway's motion for summary judgment on Henderson's complaint, dismissed Speedway's counterclaim, and denied Speedway's motion for sanctions. Both parties filed objections to the magistrate's decision. The trial court overruled

the objections and adopted the magistrate's decision. In so doing, the trial court stated, in part:

> Plaintiff's first Objection is that the Court allowed Defendant to obstruct Plaintiff's discovery. On March 6, 2017, counsel for both Plaintiff and Defendant attended the hearing on Defendant's Motion for Protective Order. At that time, Plaintiff agreed to limit his depositions to key witnesses rather than the extensive list he had proposed to Defendant.

## Assignments of Error

{¶13} Henderson appeals, raising the following assignments of error:

I.   The trial court erred in denying appellant's motion to compel discovery.

II.   The trial court erred in dismissing appellant's claims on summary judgment.

III.   The trial court erred in overruling appellant's objections to the magistrate's decision.

## Motion to Compel

{¶14} In the first assignment of error, Henderson claims that the trial court erred in denying his motion to compel discovery.

{¶15} Appellate courts review the denial of a motion to compel discovery for an abuse of discretion. *State ex rel. V Cos. v. Marshall*, 81 Ohio St.3d 467, 469, 692 N.E.2d 198 (1998). "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Sage*, 31 Ohio St.3d 173, 180, 510 N.E.2d 343 (1987). Pursuant to Evid.R. 401, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." However, "[t]he court may permissibly limit discovery so as to prevent mere 'fishing expeditions' in an effort to locate incriminating evidence." *Bland v. Graves*, 85

Ohio App.3d 644, 659, 620 N.E.2d 920 (9th Dist.1993).

{¶16} On appeal, Henderson claims that the trial court abused its discretion by failing to order Speedway to file "more complete" discovery answers. Henderson, however, fails to outline what discovery he found lacking and instead summarily concludes that the court erred by denying his motion. In his appellate brief under this assigned error, Henderson makes no specific reference to the discovery he sought to compel, other than incorporating his trial court briefs by reference. "'[P]arties cannot simply incorporate by reference arguments that they made to the trial court in their appellate brief.'" *Young v. Kaufman*, 2017-Ohio-9015, 101 N.E.3d 655, ¶ 44 (8th Dist.), quoting *State ex rel. Midview Local School Dist. Bd. of Edn. v. Ohio School Facilities Comm.*, 9th Dist. Lorain No. 16CA010991, 2017-Ohio-6928, ¶ 20.

{¶17} Henderson's February 2017 motion to compel does not offer further assistance. In his motion to compel, Henderson alleged that Speedway attempted to avoid depositions of witnesses, provided deficient responses to his written discovery requests, refused to provide a privilege log, and failed to correct "the multitude of deficiencies in the purported responses."

{¶18} The trial court set the motion to compel and Speedway's motion for a protective order for a March 6, 2017 hearing; as mentioned, the hearing was held in front of a magistrate, but not on the record. The magistrate issued a journal entry after the hearing that stated, in part: "The hearing was had and the [p]arties have agreed that the Discovery deadline shall be extended an additional 60 days and the parties have also agreed that the depositions of the two witnesses that Defendant plans to call at trial shall be taken during that 60 day period."

{¶19} In its order granting summary judgment, the trial court noted that the parties had attended the March 6, 2017 hearing and, at that time, Henderson had agreed "to limit his depositions to key witnesses rather than the extensive list he had proposed to [Speedway]."

**{¶20}** Thus, although Henderson maintains that the trial court abused its discretion by failing to compel the deposition testimony of additional witnesses, the record clearly shows that Henderson agreed to limit his deposition to two key witnesses whose depositions he took prior to the discovery deadline.

**{¶21}** Henderson's appellate brief and motion to compel likewise fail to designate which discovery responses Henderson found deficient. The record shows that Speedway provided supplemental discovery responses on November 11 and December 5, 2016, and Henderson has not shown, either to the trial court or with this court, how those responses were insufficient.

**{¶22}** Moreover, as mentioned, the magistrate held a pretrial on May 8, 2017, and set a discovery deadline of July 30 and dispositive motion deadline of August 30. Had Henderson thought Speedway's discovery responses were still insufficient, he should have renewed his motion to compel prior to the dispositive motion deadline. He did not and it was not until Speedway filed its motions for sanctions and summary judgment and *after* the dispositive motion deadline had passed that Henderson brought up that he had yet to receive complete discovery.

**{¶23}** Upon review, we find that Henderson failed to show that the court abused its discretion in denying his motion to compel. Henderson has not shown that the court's attitude was unreasonable, arbitrary, or unconscionable. Accordingly, Henderson's first assigned error is overruled.

**Summary Judgment**

**{¶24}** In the second assignment of error, Henderson claims that the trial court erred in granting summary judgment.

**{¶25}** We review summary judgment rulings de novo, applying the same standard as the trial court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). We

accord no deference to the trial court's decision and conduct an independent review of the record to determine whether summary judgment is appropriate.

{¶26} Under Civ.R. 56, summary judgment is appropriate when no genuine issue as to any material fact exists and, viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion that is adverse to the nonmoving party, entitling the moving party to judgment as a matter of law.

{¶27} On a motion for summary judgment, the moving party carries an initial burden of identifying specific facts in the record that demonstrate his or her entitlement to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the moving party fails to meet this burden, summary judgment is not appropriate; if the moving party meets this burden, the nonmoving party has the reciprocal burden to point to evidence of specific facts in the record demonstrating the existence of a genuine issue of material fact for trial. *Id.* at 293. Summary judgment is appropriate if the nonmoving party fails to meet this burden. *Id.*

{¶28} Henderson alleged the following causes of action in his complaint: (1) breach of contract; (2) negligence; (3) violations of R.C. 2307.71; and (4) violations of R.C. 1345.02.

**Breach of Contract and Negligence**

{¶29} As an initial matter, all of Henderson's causes of action center on the allegation that Speedway sold him defective gasoline. In this regard, Henderson's claims sound in products liability and are therefore subject to the OPLA, which applies to "[a]ny recovery of compensatory damages based on a product liability claim." *White v. DePuy, Inc.*, 129 Ohio App.3d 472, 478, 718 N.E.2d 450 (12th Dist.1998); R.C.2307.72(A). The OPLA and its provisions were "intended to abrogate all common law product liability claims or causes of action." R.C. 2307.71(B); *see also Parker v. Ace Hardware Corp.*, 2018-Ohio-320, 104 N.E.3d 298, ¶ 1 (2d.

Dist.), *discretionary appeal not allowed*, 153 Ohio St.3d 1433, 2018-Ohio-2639, 101 N.E.3d 465 (common law negligence, negligent failure to warn, and negligent misrepresentation claims have been abrogated by the OPLA).

**{¶30}** Therefore, because Henderson alleged common law claims that have been abrogated by the OPLA, the trial court correctly granted summary judgment on Henderson's breach of contract and negligence claims.

**OPLA Claim**

**{¶31}** Henderson further alleged that Speedway is liable under the OPLA for "failing to properly manufacture, formulate and test that product, and failing to conform the product to its representations and warranties."

**{¶32}** Under Ohio common law, a defect is considered to exist in a product which is not of good and merchantable quality, fit and safe for its ordinary and intended use. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 321, 364 N.E.2d 267 (1977). Pursuant to R.C. 2307.73(A) and (B), the OPLA renders a manufacturer liable where the claimant establishes by a preponderance of the evidence that the product was defective: (1) in manufacture or construction; (2) in design or formulation; (3) due to inadequate warning or instruction; or (4) because it did not conform to a representation by the manufacturer, so long as the defect was a proximate cause of harm for which the claimant seeks damages.

**{¶33}** Here, direct evidence is not available because the product has been destroyed. The statute provides that it shall be sufficient for the claimant to present circumstantial or other competent evidence that establishes, by a preponderance of the evidence, that the manufacturer's product in question was defective. R.C. 2307.73(B).

**{¶34}** A product is defective in manufacture or construction if, when it left the control of

its manufacturer, it deviated in a material way from the design specifications, formula, or performance standards of the manufacturer, or from otherwise identical units manufactured to the same design specifications, formula, or performance standards. A product may be defective in manufacture or construction as described in this section even though its manufacturer exercised all possible care in its manufacture or construction. R.C. 2307.74. The factors for defective design or formulation are set forth in R.C. 2307.75, and are generally based on whether the design or formulation is appropriate for its intended use under a "risk-benefit" or a "consumer expectation" analysis. *See Griffith v. Chrysler Corp.*, 7th Dist. Columbiana No. 2000-CO-67, 2003-Ohio-3464, ¶ 53-54.

{¶35} Similarly, R.C. 2307.76 requires warnings to consumers where the manufacturer of the product knew or should have known about a risk associated with the product that allegedly caused harm to the claimant, but failed to provide adequate warning or instructions in light of the likelihood of such harm. A product is also defective if it does not conform to the manufacturer's representations at the time it left the manufacturer's control, even if the manufacturer did not act negligently or wrongfully in making such representation. R.C. 2307.77.

{¶36} Speedway contends that it was the supplier, not the manufacturer of the gasoline sold to Henderson. R.C. 2307.78 also renders liability upon a supplier if the claimant establishes by a preponderance of the evidence that: (1) the supplier was negligent and that negligence is the proximate cause of harm for which the claimant seeks damages; or (2) the product in question did not conform to a representation made by the supplier at the time the product left the supplier's control, and the failure to conform proximately caused harm to the claimant; or (3) if the manufacturer of the product is or would be subject to liability under the OPLA, and: (a) there is common ownership between the manufacturer and supplier; (b) the supplier altered, modified or

failed to maintain the product while the product was in the supplier's possession, rendering the product defective; (c) the supplier marketed the product under its own label or trade name; or (d) after a written request by the claimant, the supplier failed to disclose the name and address of the manufacturer.

{¶37} R.C. 2307.79 provides that a claimant is entitled to recover compensatory damages against the manufacturer or supplier, where liability is found pursuant to the OPLA.

{¶38} The records show, however, that Henderson has not set forth evidence that the gasoline Speedway, as either a manufacturer or a supplier, sold to him on April 19, 2016, was contaminated or otherwise defective. Patterson, the technician who fixed Henderson's vehicle, issued the following service invoice:

> Took fuel sample and found water mixed with gas, drained fuel from tank and cleaned tank, found fuel pump and senders rusted from water, wires in tank corroded and fuel pressure sensor corroded, fuel injectors also stuck open and damaged from water and corrosion, drianed [sic] oil due to being contaminated from fuel passing the cylinder rings, replaced all faulty parts and pumped in fresh gas, vehicle now runs and fuel gadge [sic] and fuel range now operates like any other A7.

{¶39} Patterson testified at deposition that there was "really no way" to determine the cause of contamination. He admitted he did not perform any tests on the fuel he removed from the Audi. Patterson was asked at deposition: "How did you determine it was water mixed with gasoline?" Patterson responded: "I didn't actually know it was water. It was just kind of like a layman's term of a contamination." Patterson was also asked: "Do you know if there was any other substance in the fuel besides water, gasoline or ethanol on or about April 25, 2016?"

Patterson responded that he did not.   Counsel for Speedway asked Patterson if he could "say with any degree of professional certainty whether the fuel sold by Speedway caused the damages to Mr. Henderson's vehicle."   Patterson responded, "No."

{¶40} At deposition, Patterson admitted that the contaminated fuel "could have been a residual fuel from a previous fill-up" and that it was "possible" that it was a "residual fuel from fill-ups week months or even years prior to this incident."   Patterson further admitted it was "all speculation" that the cause of the contamination in the fuel tank was something pumped in through the gas; he was not "100 percent sure what [the contaminant] was.   No test was done [on the fuel]"; and the contaminant "could have been anything corrosive."

{¶41} Patterson testified that he saved a sample of the gasoline for approximately one week and the damaged auto parts for one to two months.   Patterson averred he had not been asked to preserve the gasoline or auto parts for any specific purpose.   It is undisputed that the gasoline and auto parts were disposed of before Speedway or any other third party had an opportunity to inspect them.

{¶42} According to the Speedway store's general manager, Lori Barrett-Drehs ("Drehs"), Henderson contacted her about his car.   Henderson told Drehs that his car experienced mechanical problems after he returned from vacation.   Drehs asked Henderson if he had retained a sample of the fuel.   Henderson told Drehs he had a sample, but did not have it in his possession at the time.   According to Drehs, Henderson was the only person who complained of contaminated fuel at the Bay Village station.

{¶43} Speedway contends that because the car's gasoline tank holds 19.8 gallons, and Henderson filled up the vehicle with 16.721 gallons, there were approximately 3 gallons of some unknown residual substance in the tank prior to Henderson's arrival at the Bay Village station,

and the 16.721 gallons purchased comingled with that unknown residual. The record shows that Speedway set forth evidence of the systems it had in place to consistently and routinely monitor storage tanks and fuel lines for sudden increases or decreases in pressure, volume, and fuel delivery and monitored the temperature, fuel depth, and checked for the presence of water in its fuel. The 24-hour monitoring for contaminants and reports did not indicate the presence of water in any of the underground storage tanks at that location. Morevoer, there is no evidence that any of Speedway's monitoring systems were malfunctioning at the time in question; the audits of the tanks performed both before and after Henderson visited Speedway show that there were no contaminants in the fuel storage and delivery system.

{¶44} This court has held that a plaintiff "is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." *C4 Polymers, Inc. v. Huntington Natl. Bank*, 2015-Ohio-3475, 41 N.E.3d 788, ¶ 64 (8th Dist.), citing *Cincinnati Ins. Co. v. GM Corp.*, 6th Dist. Ottawa No. 94OT017, 1994 Ohio App. LEXIS 4960, 3 (Oct. 28, 1994). Henderson has not provided any evidence to rebut Speedway's position; Henderson cannot show that the gasoline he purchased from the Bay Village Speedway proximately caused the damage to his car. Patterson admitted that he speculated that the damage to Henderson's car was caused by water mixing with gasoline and he could not tell the origin or type of contaminants that had damaged the vehicle. Most importantly, because Henderson failed to properly preserve the fuel and the auto parts from the car, there is no way to demonstrate that the fuel from Speedway proximately caused the damage to his car.

**CSPA Claim**

{¶45} Henderson also alleged a violation of the Ohio CSPA by claiming that Speedway (1) represented that the gasoline had performance characteristics and benefits that it does not have;

(2) represented that the gasoline was a particular standard and quality that it was not; and (3) knew that Henderson could not benefit from the transaction. *See* R.C. 1345.02.

{¶46} Pursuant to the CSPA, a supplier is not permitted to commit an unfair, deceptive, or unconscionable act in connection with a consumer transaction. R.C. 1345.02(A); 1345.03(A). A supplier, such as Speedway, is prohibited from representing that the gasoline had performance characteristics and benefits that it does not have or representing that the gasoline is a particular standard, quality, or grade if it is not. R.C. 1345.02(B)(1)-(2). Speedway would also be in violation of the CSPA if it knew at the time Henderson purchased the gasoline that he would not receive a substantial benefit from the gasoline. R.C. 1345.03(B)(3).

{¶47} But, as mentioned, Henderson must show that the gasoline he purchased was contaminated and that contamination caused the damage to his car. Again, because Henderson failed to preserve the fuel and damaged auto parts, he cannot demonstrate that the gasoline proximately caused damage to his vehicle. Thus, if he cannot show that the gasoline was contaminated, he likewise cannot show that Speedway knew it was selling him contaminated gasoline.

{¶48} In light of the above, the trial court did not err in granting summary judgment in favor of Speedway.

{¶49} The second assignment of error is overruled.

**Objections to Magistrate's Decision**

{¶50} In the third assignment of error, Henderson contends that the trial court erred in overruling his objections to the magistrate's decision.

{¶51} In the nine objections Henderson lists in his appellate brief, he reiterates many of the same arguments he made under the first and second assignments of error. Henderson claims that

the magistrate failed to consider his affidavit in support of an extension of time for discovery; the magistrate relied on documents and deposition testimony that were submitted in contravention of Civ.R. 56(C) and the rules of evidence; and the magistrate's decision was incorrect because genuine issues of material fact remain that preclude summary judgment.

{¶52} Henderson also incorporates his objections and brief in opposition to Speedway's dispositive motion as if "rewritten herein." This court "may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)." App.R. 12(A)(2). Merely incorporating the trial court record into the appellate brief is insufficient. "'If an argument exists that can support [an] assignment of error, it is not [the appellate court's] duty to root it out. * * * It is not the function of [the appellate court] to construct a foundation for [an appellant's] claims[.]'" *In re A.Z.*, 4th Dist. Meigs No. 11CA3, 2011-Ohio-6739, ¶ 18, quoting *Coleman v. Davis*, 4th Dist. Jackson No. 10CA5, 2011-Ohio-506, ¶ 13. "'It is not * * * our duty to create an argument where none is made.'" *In re A.Z.* at ¶ 18, quoting *Deutsche Bank Natl. Trust Co. v. Taylor*, 9th Dist. Summit No. 25281, 2011-Ohio-435, ¶ 7.

{¶53} In addition, Civ.R. 53(D)(3)(b)(iii) provides that "[a]n objection to a factual finding * * * shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available." "Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)." Civ.R. 53(D)(3)(b)(iv) .

{¶54} It is unclear from the record whether the summary judgment hearing was transcribed or otherwise recorded. There is no transcript in the record. Henderson, however, failed to comply with Civ.R. 53(D)(3)(b) because he did not submit a transcript or affidavit of the evidence to the trial court with his objections. Therefore, he has waived all but plain error on appeal.

{¶55} Because we addressed the majority of Henderson's claims in the first and second assignments of error and concluded that the trial court correctly granted summary judgment in favor of Speedway, because Henderson fails to offer additional support of claims we did not address under the first and second assignments of error, and because Henderson has waived all but plain error, we find that the trial court did not err when it overruled his objections to the magistrate's decision.

{¶56} The third assignment of error is overruled.

**Cross-appeal**

{¶57} In Speedway's assignment of error on cross-appeal, the company argues that the trial court erred in denying its Civ.R. 37 motion for sanctions.

{¶58} Speedway moved for sanctions, requesting an order from the trial court barring Henderson: (1) from introducing any evidence or testimony concerning the properties, appearance, and/or qualities of the gasoline, or to demonstrate that the gasoline was contaminated; and/or (2) from introducing any expert testimony, including that the gasoline was in fact contaminated and/or that the gasoline actually or proximately caused damage to Henderson's vehicle; and/or (3) an order barring any testimony from Audi Bedford technician Doug Patterson, or, in the alternative, that Patterson's testimony be limited solely to the type of repairs performed and the cost for the same; and/or (4) dismissal of all claims.

{¶59} At oral argument in this case, Speedway stated that its cross-appeal would be moot

if this court affirms the trial court's decision to grant summary judgment in its favor. We agree and find Speedway's cross-appeal to be moot based on our resolution of the appeal.

{¶60} Therefore, the cross-assignment of error is overruled as moot.

{¶61} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Rocky River Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

LARRY A. JONES, SR., JUDGE

EILEEN A. GALLAGHER, A.J., and
EILEEN T. GALLAGHER, J., CONCUR