[Cite as *Everhart v. Merrick Mfg. II, L.L.C.*, 2022-Ohio-4626.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

|  |  |  |
|---|---|---|
| DARRYL EVERHART | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 29520 |
| | : | |
| v. | : | Trial Court Case No. 2019-CV-01730 |
| | : | |
| MERRICK MANUFACTURING II LLC, et al. | : | (Civil Appeal from Common Pleas Court) |
| | : | |
| Defendants-Appellees | : | |

· · · · · · · · · · ·

## O P I N I O N

Rendered on the 22nd day of December, 2022.

· · · · · · · · · · ·

DAVID R. GRANT, Atty. Reg. No. 0065436 and FRANK L. GALLUCCI, III, Atty. Reg. No. 0072680, 55 Public Square, Suite 2222, Cleveland, Ohio 44113

PAUL W. FLOWERS, Atty. Reg. No. 0046625, LOUIS E. GRUBE, Atty. Reg. No. 0091337 and MELISSA A. GHRIST, Atty. Reg. No. 0096882, Terminal Tower, 40th Floor, 50 Public Square, Cleveland, Ohio 44113

JOHN A. SMALLEY, Atty. Reg. No. 0029540, 131 North Ludlow Street, Suite 1400, Dayton, Ohio 45402
       Attorneys for Plaintiff-Appellant, Darryl Everhart

DANIEL F. GOURASH, Atty. Reg. No. 0032413 and JEFFREY S. MOELLER, Atty. Reg. No. 0074512, 26600 Detroit Road, Suite 300, Westlake, Ohio 44145

Attorneys for Defendant-Appellee, StampTech, Inc.

PATRICIA J. TROMBETTA, Atty. Reg. No. 0005451 and THOMAS F. GLASSMAN, Atty. Reg. No. 0061466, 312 Walnut Street, Suite 2530, Cincinnati, Ohio 45202
Attorney for Defendant-Appellee, Bill's Machine Service, Inc.

CHRISTOPHER C. KOEHLER, Atty. Reg. No. 0059384 and LINDSEY CARR SIEGLER, Atty. Reg. No. 0074182, 200 Public Square, Suite 3000, Cleveland, Ohio 44114
Attorneys for Defendants-Appellees, Nidec Minster Corp. and The Minster Machine Co.

DOUGLAS S. JENKS, Atty. Reg. No. 0079647 and DAVID M. RICKERT, Atty. Reg. No. 0010483, 110 North Main Street, Suite 1000, Dayton, Ohio 45402
Attorneys for Defendants-Appellees, Merrick Manufacturing II LLC and Stephen Smith

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Plaintiff-Appellant, Darryl Everhart, appeals from trial court judgments dismissing his personal injury action against the following Defendants-Appellees: StampTech, Inc. ("StampTech"); Nidec Minster Corporation and Minster Machine Company (collectively, "Minster"), and Bill's Machine Service, Inc. ("Bill's Machine").[1] According to Everhart, the trial court erred in dismissing his claims under Civ.R. 12(B)(1) based on lack of subject matter jurisdiction. Everhart further contends that the court abused its discretion by failing to let him conduct discovery into fact-intensive issues raised by the Appellees' motions to dismiss.

{¶ 2} For the reasons discussed below, we conclude that the trial court erred in dismissing the case under Civ.R. 12(B)(1) for lack of subject matter jurisdiction. The court's decision was based on the statute of repose in R.C. 2305.10(C), which bars

---

[1] We will refer to these defendants collectively as "Appellees," because they generally advance the same arguments in this appeal.

product liability claims that are not filed within the time specified in the statute. However, this statute does not involve subject matter jurisdiction, which pertains to the court's power to entertain and adjudicate a particular class of cases. Instead, application of the repose statute involves the rights of the parties in a particular case. Furthermore, R.C. 2305.10(C) does not explicitly remove the common pleas court's jurisdiction to hear cases.

{¶ 3} Instead of focusing on subject matter jurisdiction, the trial court should have considered whether the complaint failed to state a claim. Alternatively, if the court were going to consider evidence outside the complaint (as it did here), it should have allowed Everhart to conduct discovery. Failure to do so was an abuse of discretion. Accordingly, the judgment of the trial court will be reversed, and this cause will be remanded for further proceedings.

## I. Facts and Course of Proceedings

{¶ 4} On April 17, 2019, Everhart filed a personal injury complaint against the following parties: Merrick Manufacturing II, LLC ("Merrick II"); Stephen Smith (an owner, officer, manager, and/or owner of Merrick II); StampTech; Minster; Merrick Manufacturing LLC ("Merrick I") and Bill's Machine). According to the complaint, Everhart was injured on April 20, 2017, while operating a press identified as a Minster 60 ton OBI press ("Press"). Everhart was an employee of Merrick II and was operating the Press in "single" mode rather than "continuous" mode. When Everhart reached into the Press with his right hand to retrieve a finished piece, the Press suddenly started operating

automatically or continuously and caused severe damage to Everhart's right hand.

{¶ 5} The complaint alleged that the Press was not properly equipped with point of operation guarding, in violation of 29 C.F.R. 1910.212(a)(3)(ii) and Ohio Adm.Code 4123-1-5-10(D), and also failed to comply with safety requirements in 29 C.F.R. 1910.217, which included: "(a) having a control system with control reliability; (b) having a brake system monitor; (c) conducting periodic and regular inspections, testing, maintenance and repair of all parts, auxiliary equipment and safeguards including the clutch/brake mechanism, antirepeat feature, and single-stroke mechanism; and (d) maintaining a certified record of each inspection, each maintenance and each repair task performed." Complaint, ¶ 16.

{¶ 6} The complaint alleged several bases of liability, including: (1) a statutory workplace intentional tort claim against Merrick II; (2) a negligence claim against StampTech, Minster, Merrick I, and Bill's Machine; (3) a product liability claim against StampTech, Minster, and Bill's Machine as "manufacturers" under R.C. 2307.71(A)(9); (4) an alternate product liability claim against StampTech, Minster, and Bill's Machine as "suppliers" as defined in R.C. 2307.71(A)(15)(a); and (5) a "Common Law *Blankenship; Fyfe* Co-employee Intentional Tort" claim against Smith.   Complaint, ¶ 18-81.

{¶ 7} On May 7, 2019, StampTech filed an answer and raised various defenses, including that the complaint failed to state a claim and was barred by the statute of repose in R.C. 2305.10(C)(1).   StampTech Answer at ¶ 22 and 24.   Bill's Mechanic then filed an answer on May 9, 2019, and included various affirmative defenses.   However, Bill's Mechanic, while raising failure to state a claim, did not raise either the statute of limitations

or the statute of repose as defenses.

**{¶ 8}** On May 16, 2019, Minster filed a motion to dismiss based on lack of jurisdiction under Civ.R. 12(B)(1). Minster's motion was based on the ten-year statute of repose in R.C. 2305.10(C)(1) and the fact that it had manufactured and sold the Press more than 40 years earlier. Minster attached an affidavit indicating that Borg & Beck, a division of Borg-Warner Corporation in Sterling Heights, Michigan, ordered three presses, including the Press, and that an order was generated on June 11, 1974. Affidavit of Russell Bensman, attached as Ex. 1 ("Bensman Aff."), ¶ 2-3. Nidec Minster then manufactured and shipped the Press to the original purchaser, Borg & Beck, on January 8, 1975. *Id.* at ¶ 4-5. The original order and packing list were attached to the affidavit as Exs. 1-A and 1-B.

**{¶ 9}** Subsequently, on May 17, 2019, Merrick II and Smith filed an answer, denying liability and raising affirmative defenses of failure to state a claim and the bar of the statute of limitations or repose. Merrick II and Smith Answer, ¶ 83 and 95.

**{¶ 10}** Everhart then asked for and received an extension of time until June 13, 2019, to respond to Minster's motion to dismiss. On June 10, 2019, StampTech also filed a motion to dismiss based on lack of subject matter jurisdiction under Civ.R. 12(B)(1). StampTech's motion was based on the statute of repose in R.C. 2305.10(C) and the fact that Everhart's purported negligence claim was actually a product liability claim that had been abrogated by the Ohio Products Liability Act ("OPLA").

**{¶ 11}** The affidavit and exhibits attached to StampTech's motion indicated that StampTech had purchased the Press at auction on April 10, 2012, for $10,350. After

purchasing the Press, StampTech inspected it and "performed certain minor repairs, including inspection of the bearing clearance, lubrication, and electric system, repair/replacement of the clutch and brake with new OEM parts from Defendant Nidec Minster Corporation, [and] installation of Ross dual ergonomic palm buttons and of a new Cisco time based brake monitor." Tony Amato Affidavit ("Amato Aff."), ¶ 5. In addition, the Press was "cleaned, painted and inspected under power." *Id.* According to Amato, "[a]ll functions of the Press were found to be performing properly. The Press was not substantially rebuilt, remanufactured, or reconditioned." *Id.*

{¶ 12} Following these repairs, StampTech sold the Press to Merrick "as is," with a 30-day "Used Equipment Warranty" on April 3, 2013. *Id.* at ¶ 7-8. Subsequently, StampTech credited Merrick for repairs that Bill's Machine and others made around June 2013. *Id.* at ¶ 8 and Ex. A-4 attached to the Amato Aff.

{¶ 13} On June 13, 2019, Everhart filed a consolidated response to the motions to dismiss as well as a motion for a 120-day extension of time to conduct discovery. In addition to arguing that Civ. R. 12(B)(1) was not the appropriate vehicle, Everhart argued that even if a potential subject matter jurisdiction argument had been raised, he should be able to depose the witnesses who executed the affidavits and to review all relevant records. Plaintiffs' Consolidated Memorandum in Opposition to Motion to Dismiss (June 13, 2019), p. 8. Minster filed its reply memorandum in support of its motion to dismiss on June 26, 2019, and StampTech filed its reply memorandum the following day. Everhart then submitted two notices of supplemental authority, to which Minster and StampTech responded.

{¶ 14} On August 29, 2019, the trial court filed a decision sustaining the motions to dismiss filed by Minster and StampTech. The court concluded that it lacked subject matter jurisdiction because the statute of repose in R.C. 2305.10(C)(1) expired in January 1985, and the products liability claim against these parties never existed. Decision, Order and Entry (Aug. 29, 2019), p. 4. The court further found that because the cause of action did not exist, allowing discovery would not remedy the issue. *Id.* Finally, the court held that because Minster and StampTech were being sued as "manufacturers" as defined in R.C. 2307.71(A)(9), the OPLA had abrogated any negligence claims against these parties. *Id.* at p. 4-5. The court's order was interlocutory, because claims against the other parties remained pending.

{¶ 15} On September 12, 2019, Everhart filed a motion asking the court to reconsider its decision or to include a Civ.R. 54(B) certification. After Minster and StampTech responded, Everhart filed a reply memorandum. On October 1, 2019, the trial court overruled the motion for reconsideration and denied the Civ.R. 54(B) request.

{¶ 16} On October 8, 2019, Bill's Machine also filed a motion to dismiss under Civ.R. 12(B)(1). This motion relied on the prior motions to dismiss that had been filed and on the trial court's dismissal of the claims against Minster and StampTech. In responding to the motion, Everhart first acknowledged that the trial court's two prior rulings "would seem to require this latest Motion to Dismiss to be granted as well." Plaintiff's Memorandum in Opposition to Defendant Bill's Machine Service Inc.'s Motion to Dismiss (Oct. 21, 2019), p. 1. However, Everhart followed this by stating that:

The upshot of these decisions appears to be that under R.C. 2305.10(C)(1)

and R.C. 2307.71(B), no common pleas court can ever acquire subject matter jurisdiction over a products liability or negligence claim involving a product that was delivered to its first purchaser or lessee more than ten years earlier, even when there are allegations of negligent post-production inspections, repairs, and modifications. In order to preserve his positions for appeal, Plaintiff is nevertheless required to furnish the following response.

*Id.*

{¶ 17} In addition to reiterating his previous position on the inapplicability of Civ.R. 12(B)(1), Everhart noted the allegations in the complaint that Bill's Machine had been negligent in performing actions with respect to the machinery between 2013 and the 2017 injury. *Id.* at p. 2. Everhart again asked the court to allow time for conducting discovery concerning the factual matters addressed in the motions. *Id.* at p. 10.

{¶ 18} On October 22, 2019, Bill's Machine filed a reply memorandum incorporating the previous replies of Minster and StampTech in support of their motions to dismiss. Everhart then, on October 23, 2019, filed notices indicating he had served a first set of interrogatories and a request for production of documents on Merrick II and Bill's Machine. However, on October 30, 2019, the trial court filed a decision overruling in part and sustaining in part Bill's Machines' motion to dismiss. As with Minster and StampTech, the court found that no products liability claim existed due to the statute of repose and denied Everhart's motion to conduct discovery. Decision, Order and Entry (Oct. 30, 2019), p. 2-4. Nonetheless, the court distinguished the negligence claim

against Bill's Machine from the other claims prohibited by the OPLA, because the alleged negligence might have arisen from separate repairs that Bill's Machine had performed. *Id*. at p. 4.

{¶ 19} On November 6, 2019, Bill's Machine filed a request for reconsideration of the court's decision. In the motion, Bill's Machine argued that the repairs it had performed, like StampTech's, had been minimal and had not rebuilt, remanufactured, or reconditioned the Press. On November 20, 2019, Bill's Machine attached an affidavit from Bill Purtee, the employee who had conducted the repairs to the Press. Purtee Affidavit ("Purtee Aff."), ¶ 2. Purtee stated that he did only minor repairs and did not "substantially rebuild, remanufacture, or recondition the press." *Id*. at ¶ 6. In addition, Purtee attached some invoices showing a total of about $2,500 in repairs and estimated repairs. *Id*. at ¶ 4 and Ex. A attached to the Purtee Aff.

{¶ 20} On November 20, 2019, Everhart responded to the reconsideration motion, stating, among other things, that "[i]t certainly does appear that [Bill's Machine's] post-manufacturing involvement with the press is indistinguishable [from the involvement of Minster and StampTech]." Plaintiff's Memorandum in Opposition to Defendant Bill's Machine Service, Inc.'s Motion for Reconsideration, p. 2. On the other hand, Everhart stated that "[b]ecause Plaintiff has not yet concluded his discovery, the full nature and extent of these Defendants' repairs and modifications has not been determined. Plaintiff has no way of knowing with any confidence whether and how these Defendants caused or contributed to the defect and hazards in the machinery that cost him his right hand." *Id*. at p. 3.

**{¶ 21}** Everhart also said it agreed that the court should reconsider its October 30, 2019 decision as to Bill's Machine, but asked the court to reaffirm its decision that negligence claims could be pursued if they fell outside the OPLA.  *Id.* at p. 3-4.

**{¶ 22}** Subsequently, on December 3, 2019, Everhart asked to supplement his memorandum opposing reconsideration.   Everhart noted that Purtee's affidavit had been submitted the same day as Everhart's response to the reconsideration motion and had prevented Everhart from responding to the new evidence.[2]   Everhart contended that the affidavit had changed nothing from the perspective that Minster, StampTech, and Bill's Machine had all claimed that their efforts in servicing or repairing the Press were minimal. However, Everhart stressed that he had not been able to investigate and verify their "self-serving assurances."   Motion for Leave to Supplement (Dec. 3, 2019), p. 1.

**{¶ 23}** The trial court never ruled on Everhart's motion for leave to supplement, and the court did not consider it in ruling on the motion for reconsideration.   Decision, Order and Entry (Dec. 16, 2019), p. 1.    In its decision, the court sustained the motion for reconsideration and dismissed the negligence claims against Bill's Machine.   In particular, the court focused on Everhart's agreement that " 'there is no logical reason for Defendant Bill's Machine to be treated any differently than Defendants Minster and StampTech for the purposes of [Plaintiff's common law negligence claims].' "    *Id.* at p. 3, quoting Everhart's Memorandum in Opposition to Defendant Bill's Machine Service,

---

[2]  According to the record, Purtee's affidavit was filed around 3:16 p.m. on November 20, 2019, and Everhart's memorandum opposing reconsideration was filed a little more than one hour later, at around 4:20 p.m. on November 20, 2019.   From the content of Everhart's memorandum, it appears that Everhart was not aware that Purtee's affidavit had been filed.

Inc.'s Motion for Reconsideration, at p. 4. At that time, Merrick I, Merrick II, and Smith still remained as parties.

{¶ 24} On December 18, 2019, the Ohio Bureau of Workers' Compensation ("BWC") filed a motion to intervene to assert its right of recovery. Subsequently, after holding a scheduling conference, the court filed a final pretrial order on December 23, 2019, setting discovery deadlines and an October 26, 2020 trial date. On January 15, 2020, the court granted the BWC's motion to intervene, and the BWC filed its complaint on January 23, 2020. After receiving permission from the court, Everhart filed a first amended complaint on February 10, 2020, asserting a cross-claim against the BWC.

{¶ 25} The court later vacated the scheduling order due to Covid-19, and on November 10, 2020, set a new trial date for June 27, 2022. On April 22, 2022, Everhart voluntarily dismissed its claims against Merrick II and Smith only, with prejudice. In addition, on May 23, 2022, Everhart dismissed his claims against Merrick Manufacturing LLC d/b/a/ or a/k/a Merrick Manufacturing (Merrick I) without prejudice. The same day, Everhart filed a notice of appeal from the court's orders of August 29, 2019; October 1, 2019; October 30, 2019; and December 16, 2019. The appeal was docketed as Montgomery App. No. 29481.

{¶ 26} We then filed a show cause order, noting that we appeared to lack jurisdiction over the case due to the pending amended complaint and cross-claim. *See Everhart v. Merrick Mfg. II, LLC*, 2d Dist. No. 29481 (May 27, 2022), p. 2. We gave Everhart 14 days to respond to the order. *Id.*

{¶ 27} On June 10, 2022, Everhart notified us that the only remaining claims were

those of the BWC against Everhart and his cross-claim against the BWC. Everhart further said that he and the BWC had agreed to jointly dismiss those remaining claims; he, therefore, asked us to treat his notice of appeal as premature. We found that we lacked jurisdiction over the appeal and dismissed it. *See Everhart v. Merrick Mfg. II, LLC,* 2d Dist. No. 29481 (Decision & Final Judgment Entry, June 28, 2022).

{¶ 28} On July 1, 2022, the BWC and Everhart dismissed their claims against each other, without prejudice. Everhart then appealed on July 5, 2022, from the above-listed orders of the trial court, and the appeal was docketed as Montgomery App. No. 29520 (the current appeal).

## II. Dismissal under Civ.R. 12(B)(1)

{¶ 29} Everhart's first assignment of error states that:

The Trial Court Erred as a Matter of Law by Dismissing Plaintiff-Appellant's Statutory Products Liability and Common Law Negligence Claims for Lack of Subject Matter Jurisdiction Under Authority of Civ.R. 12(B)(1).

{¶ 30} Under this assignment of error, Everhart first contends that the trial court erred in dismissing his product liability claims under Civ.R. 12(B)(1) for lack of subject matter jurisdiction. According to Everhart, common pleas courts have broad jurisdiction, and the statute of repose in R.C. 2305.10(C)(1) does not divest these courts of jurisdiction over civil actions. Before we address this point, we will briefly discuss the standards that apply to dismissals under Civ.R. 12(B)(1).

## A. Civ.R. 12(B)(1) Dismissals.

{¶ 31} Civ.R. 12(B)(1) allows parties to move for dismissal based on "lack of jurisdiction over the subject matter."  "The standard of review for a dismissal pursuant to Civ.R. 12(B)(1) is whether any cause of action cognizable by the forum has been raised in the complaint."  *State ex rel. Bush v. Spurlock*, 42 Ohio St.3d 77, 80, 537 N.E.2d 641 (1989), citing *Avco Fin. Servs. Loan, Inc. v. Hale*, 36 Ohio App.3d 65, 67, 520 N.E.2d 1378 (10th Dist.1987).  Under Civ.R. 12(B)(1), a court may "consider outside matter attached to a motion to dismiss for lack of jurisdiction without converting it into a motion for summary judgment if such material is pertinent to that inquiry."  *Southgate Dev. Corp. v. Columbia Gas Transm. Corp.*, 48 Ohio St.2d 211, 214, 358 N.E.2d 526 (1976).

{¶ 32} "Appellate review of dismissals under Civ.R. 12(B)(1) is de novo."  *Cook v. Pitter Patter Learning Ctr., LLC*, 2d Dist. Montgomery No. 29260, 2022-Ohio-961, ¶ 17, citing *State ex rel. Ohio Civ. Serv. Emps. Assn. v. State of Ohio*, 146 Ohio St.3d 315, 2016-Ohio-478, 56 N.E.3d 913, ¶ 12.  "This means we apply the same standards as the trial court."  *Id.*, citing *Carter v. Trotwood-Madison City Bd. of Edn.*, 181 Ohio App.3d 764, 2009-Ohio-1769, 910 N.E.2d 1088, ¶ 26 (2d Dist.).

## B. Jurisdiction over Product Liability Claims

{¶ 33} As noted, Everhart contends that the trial court erred in relying on Civ.R. 12(B)(1) because Ohio common pleas courts have broad subject matter jurisdiction, and R.C. 2305.10(C)(1) does not expressly restrict the court's subject matter jurisdiction.  In

contrast, Appellees argue that R.C. 2305.10(C)(1) deprives trial courts of subject matter jurisdiction because as a statute of repose, a party's product liability claim is deemed to have never existed if it is not brought within the time period outlined in the statute. According to Appellees, this differs from a statute of limitations, which is an affirmative defense. This is the position the trial court adopted. Neither the trial court nor any party cited Ohio decisions that are specifically on point.

{¶ 34} The Supreme Court of Ohio has said on various occasions that "jurisdiction is a vague term, ' "a word of many, too many, meanings." ' " *Cheap Escape Co. v. Haddox, LLC,* 120 Ohio St.3d 493, 2008-Ohio-6323, 900 N.E.2d 601, ¶ 5, quoting *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 90, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1988). (Other citation omitted.) *Accord Ostanek v. Ostanek*, 166 Ohio St.3d 1, 2021-Ohio-2319, 181 N.E.3d 1162, ¶ 20. "The general term 'jurisdiction' can be used to connote several distinct concepts, including jurisdiction over the subject matter, jurisdiction over the person, and jurisdiction over a particular case." *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, ¶ 18, citing *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, ¶ 11-12. In *Kuchta*, the court stressed that "[t]he often unspecified use of this polysemic word can lead to confusion and has repeatedly required clarification as to which type of 'jurisdiction' is applicable in various legal analyses." (Citations omitted.) *Id*.

{¶ 35} The court also noted in *Kuchta* that "[s]ubject-matter jurisdiction is the power of a court to entertain and adjudicate a particular class of cases. * * * A court's subject-matter jurisdiction is determined without regard to the rights of the individual parties

involved in a particular case." (Citations omitted.) *Id.* at ¶ 19. *See also Ostanek* at ¶ 21. Instead of relating to the parties' rights, " 'the focus is on whether the forum itself is competent to hear the controversy.' " *Corder v. Ohio Edison Co.*, 162 Ohio St.3d 639, 2020-Ohio-5220, 166 N.E.3d 1180, ¶ 14, quoting *State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248, ¶ 23.

{¶ 36} In contrast, "[a] court's jurisdiction over a particular case refers to the court's authority to proceed or rule on a case that is within the court's subject-matter jurisdiction." *Kuchta* at ¶ 19, citing *Pratts* at ¶ 12. "This latter jurisdictional category involves consideration of the rights of the parties." *Id.*

{¶ 37} "Ohio's common pleas courts are endowed with 'original jurisdiction over all justiciable matters * * * as may be provided by law.' " *Kuchta* at ¶ 20, quoting Article IV, Section 4(B), Ohio Constitution. "Jurisdiction has been 'provided by law' in R.C. 2305.01, which states that courts of common pleas have 'original jurisdiction in all civil cases in which the sum or matter in dispute exceeds the exclusive original jurisdiction of county courts.' " *Id.* There is no question here that Everhart's claims exceed that amount.

{¶ 38} In *Kuchta*, the court stressed that it had "long held that the court of common pleas is a court of general jurisdiction, with subject-matter jurisdiction that extends to 'all matters at law and in equity that are not denied to it.' " *Id.* at ¶ 19, quoting *Saxton v. Seiberling*, 48 Ohio St. 554, 558-559, 29 N.E. 179 (1891). "Because of R.C. 2305.01's general grant of jurisdiction, a court of common pleas has jurisdiction over any case in which the matter in controversy exceeds the jurisdictional limit unless some statute takes

that jurisdiction away." *Ohio High School Athletic Assn. v. Ruehlman*, 157 Ohio St.3d 296, 2019-Ohio-2845, 136 N.E.3d 436, ¶ 9. The court further stressed in *Ruehlman* that "when we have found that a court of common pleas patently and unambiguously lacks jurisdiction, it is almost always because a statute explicitly removed that jurisdiction." *Id.*

{¶ 39} According to Appellees, R.C. 2305.10(C)(1) qualifies as such a statute by taking away the trial court's jurisdiction. R.C. 2305.10(C)(1) provides (with exceptions not applicable here) that:

> [N]o cause of action based on a product liability claim shall accrue against the manufacturer or supplier of a product later than ten years from the date that the product was delivered to its first purchaser or first lessee who was not engaged in a business in which the product was used as a component in the production, construction, creation, assembly, or rebuilding of another product.

{¶ 40} We disagree that R.C. 2305.10(C)(1) explicitly takes away a trial court's jurisdiction. In fact, this statute says nothing about jurisdiction, nor does it state that exclusive jurisdiction lies with other tribunals, offices, or agencies. The Supreme Court of Ohio has stressed that, generally, an explicit removal of jurisdiction "occurs when the General Assembly confers exclusive jurisdiction over a specific subject matter on a particular tribunal, office, or agency." *Ostanek*, 166 Ohio St.3d 1, 2021-Ohio-2319, 181 N.E.3d 1162, at ¶ 29. As one example, the court noted that the General Assembly had " 'vested the Public Utilities Commission of Ohio ("PUCO") with exclusive jurisdiction over most matters relating to public utilities, including the rates charged and the services

provided.' " *Id.*, quoting *Corder*, 162 Ohio St.3d 639, 2020-Ohio-5220, 166 N.E.3d 1180, ¶ 2. Other examples cited were R.C. 935.20(A), which gives the Ohio Department of Agriculture "exclusive authority to order the quarantine or transfer of dangerous wild animals," and R.C. Chapter 4117, under which "the State Employment Relations Board has exclusive jurisdiction over charges of unfair labor practices." *Id.*, citing *State ex rel. Dir., Ohio Dept. of Agriculture v. Forchione*, 148 Ohio St.3d 105, 2016-Ohio-3049, 69 N.E.3d 636, ¶ 25 and 29, and *State ex rel. Wilkinson v. Reed*, 99 Ohio St.3d 106, 2003-Ohio-2506, 789 N.E.2d 203, ¶ 16 and 21.

{¶ 41} We further disagree that distinctions between statutes of limitations and statutes of repose operate to deprive the common pleas court of subject matter jurisdiction. It is true that the Supreme Court of Ohio has said that " '[u]nlike a true statute of limitations, which limits the time in which a plaintiff may bring suit after the cause of action accrues, a statute of repose * * * potentially bars a plaintiff's suit *before* the cause of action arises.' " (Emphasis sic.) *Groch v. Gen. Motors Corp.*, 117 Ohio St.3d 192, 2008-Ohio-546, 883 N.E.2d 377, ¶ 112, quoting *Sedar v. Knowlton Constr. Co.*, 49 Ohio St.3d 193, 195, 199, 551 N.E.2d 938 (1990).[3] "Thus, the statute can prevent claims from ever vesting if the product that allegedly caused an injury was delivered to an end user more than ten years before the injury occurred. * * * Because such an injured party's cause of action never accrues against the manufacturer or supplier of the product, it never

---

[3] The Supreme Court of Ohio overruled *Sedar* on other grounds in *Brennaman v. R.M.I. Co.*, 70 Ohio St.3d 460, 639 N.E.2d 425 (1994). Later, the court limited *Brennaman* "to its particular holding that former R.C. 2305.131, the prior statute of repose for improvements to real property, was unconstitutional." *Groch*, 117 Ohio St.3d 192, 2008-Ohio-546, 883 N.E.2d 377, at ¶ 146 (instead approving the prior reasoning and analysis in *Sedar*).

becomes a vested right." *Id.* at ¶ 149.

{¶ 42} Nonetheless, even if the right is not "vested," the issue is between the parties and involves whether the plaintiff's complaint fails to state a claim. Civ.R. 12(B)(6), therefore, would be the applicable provision, and if the matter could not be resolved by accepting the complaint's allegations as true, then the court should allow discovery and decide the matter on summary judgment. *See Rose v. Primc*, 2d Dist. Montgomery No. 29025, 2021-Ohio-3054, ¶ 64-65 (rejecting plaintiff's contention that the trial court erred in considering evidence beyond the complaint in deciding a Civ.R. 12(B)(6) motion to dismiss; instead, the court properly converted the motion to dismiss into a summary judgment motion and gave the parties' notice of its intention). *See also Grayson v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga No. 110684, 2022-Ohio-1668, ¶ 6-7 (stating that summary judgment is a better procedure than Civ.R. 12(B)(6) for addressing affirmative defenses like the statute of repose and the statute of limitations).

{¶ 43} As noted, the parties have not cited (and we have not found) Ohio authority specifically ruling on this issue in the context of R.C. 2305.10(C)(1). However, Ohio courts have said that "[l]ike the expiration of a statute of limitations, the expiration of a statute of repose is also an affirmative defense. * * * Thus, it follows that the expiration of a statute of repose also does not deprive a court of jurisdiction." *Adams v. Durrani*, 2022-Ohio-60, 183 N.E.3d 560, ¶ 96 (1st Dist.), citing *Groch*, 117 Ohio St.3d 192, 237, 2008-Ohio-546, 883 N.E.2d 377, at ¶ 251 (Pfeifer, J., concurring in part and dissenting in part).

{¶ 44} In *Adams*, the court held that the defendants had waived the application of the statute of repose in R.C. 2305.113 because they had failed to raise it during pretrial

proceedings. *Id.* at ¶ 96-98. *See also McQuade v. Mayfield Clinic, Inc.*, 2022-Ohio-785, 186 N.E.3d 278, ¶ 14 (1st Dist.) (referring to the statute of repose for medical claims in R.C. 2305.113 as an "affirmative defense"); *Minaya v. NVR, Inc.*, 2017-Ohio-9019, 103 N.E.3d 160, ¶ 6 (8th Dist.) (referencing an "exception to the affirmative defense of the statute of repose" in R.C. 2305.131(A), which has a 10-year bar for claims based on improvements to real property); *Fazio v. Gruttadauria*, 8th Dist. Cuyahoga No. 90562, 2008-Ohio-4586, ¶ 23 (defendant waived affirmative defenses of statute of limitations and statute of repose by failing to answer the complaint and assert them); and *Hetzer-Young v. Precision Airmotive Corp.*, 184 Ohio App.3d 516, 2009-Ohio-5365, 921 N.E.2d 683, ¶ 24-32 (8th Dist.) (General Aviation Revitalization Act of 1994, 49 U.S.C. 40101, as a statue of repose, "acts as an affirmative defense and 'creates an explicit statutory right not to stand trial").

{¶ 45} Minster has argued that case law involving R.C. 2305.113 is distinguishable because this statute says that "no action * * * shall be commenced," while R.C. 2305.10(C)(1) states that "no cause of action * * * shall accrue." Minster Brief, p. 11. In addition, StampTech focuses on the fact that R.C. 2305.10(C) is a "true statute of repose" and is jurisdictional because it prevents a cause of action from ever accruing. StampTech Brief, p. 12-13.

{¶ 46} However, the Supreme Court of Ohio has not recognized such distinctions and has classified both R.C. 2305.113 and R.C. 2305.131 as "true" statutes of repose. *E.g., Antoon v. Cleveland Clinic Found.*, 148 Ohio St.3d 483, 2016-Ohio-7432, 71 N.E.3d 974, ¶ 1 (stating that "R.C. 2305.113(C) is a true statute of repose that applies to both

vested and nonvested claims"); *New Riegel Local School Dist. Bd. of Edn. v. Buehrer Group Architecture & Eng., Inc.*, 157 Ohio St.3d 164, 2019-Ohio-2851, 133 N.E.3d 482, ¶ 43 (holding "[i]t is manifest that the General Assembly understood R.C. 2305.131 to be a true statute of repose, i.e., one that bars accrued claims as well as those that have not yet vested").

{¶ 47} Even if this were otherwise, R.C. 2305.131(A)(1), in fact, has language that is identical in pertinent part to R.C. 2305.10(C), in stating that "no cause of action * * * shall accrue later than ten years from the date of substantial completion of such improvement [to real property]." R.C. 2305.131(C) also specifically refers to the defense in "Division (A)(1)" as an "affirmative defense" that is not available in situations where a defendant has engaged in fraud. *See also Furlan v. Troiano Homes, Inc.*, 8th Dist. Cuyahoga No. 49430, 1985 WL 8612, *1 (Sept. 19, 1985) (defendant did not waive reliance on R.C. 2305.131 by failing to specifically list it as an affirmative defense; statute of limitations was raised, and Supreme Court of Ohio had "referred to statutes of limitations as statutes of repose").

{¶ 48} In *Lawson v. Valve-Trol Co.*, 81 Ohio App.3d 1, 610 N.E.2d 425 (9th Dist.1991), the court discussed an applicable Indiana statute of repose and noted that a statute of repose is not explicitly listed as an affirmative defense in Civ.R. 8. *Id.* at 5. Given the nature of statutes of repose (which prevent causes of action from arising), the court felt the defendant sufficiently raised the matter by including the defense of failure to state a claim in its answer. As a result, the defendant was not prohibited from later raising the issue in a summary judgment motion. *Id.* at 6.

{¶ 49} We also note that some of Appellees' assertions are simply incorrect. For example, at p. 12 of its brief, StampTech cites *Krohnengold v. New York Life Ins. Co.*, 2022 WL 3227812, *6 (S.D.N.Y. Aug. 10, 2022), for the proposition that a "six-year Federal statutory time limit on breach of fiduciary duty suits is a true statute of repose, and hence can be raised via a motion to dismiss for lack of jurisdiction under Fed.R.Civ.P. 12(B)(1)."

{¶ 50} *Krohnengold* involved two kinds of motions to dismiss: (1) dismissal of one claim based on lack of Article III standing, brought under Fed.Civ.R.P. 12(b)(1); and (2) dismissal of all five of the plaintiffs' claims for failure to state a claim, brought under Fed.Civ.R.P. 12(b)(6). *Id.* at *3. The standing issue, however, did not relate to the statute of repose. Instead, the statute of repose issue was decided based on failure to state a claim and from reviewing the allegations in the amended complaint. *Id.* at *6-7.

{¶ 51} It is true that the court, in addressing "repose," remarked that, unlike the statute of limitations, the statute of repose in 29 U.S.C. 1113(1) was not an "affirmative defense" and that the plaintiffs had "the burden of demonstrating their claims are not barred by the six-year limitations period." However, even if we imposed such a burden on Everhart here, the trial court failed to let Everhart conduct any discovery. In short, this case could have been decided based on Civ.R. 12(B)(6), rather than on the lack of subject matter jurisdiction, or the court could have let Everhart conduct discovery to explore the factual assertions that Appellees made. Instead, the court prevented Everhart from conducting any discovery.

{¶ 52} We also note that the wording of 29 U.S.C. 1113(1) states that "[n]o action

may be commenced" after the time periods that are listed. This is similar to the wording in R.C. 2305.113(C) and again indicates that Minster's suggested distinction between the repose wording in R.C. 2305.113(C) and R.C. 2305.10(C)(1) is incorrect.

**{¶ 53}** Similarly, Minster quotes *Hayes v. Gen. Motors Corp.*, 94 F.3d 644, 1996 WL 452916 (6th Cir.1996), for the fact that " 'failure to commence the action within the applicable time period extinguishes the right itself and divests the court . . . of any subject matter jurisdiction[.]' " Minster Brief at p. 7. First of all, *Hayes* is an unpublished decision that has been deemed "non-precedential." *See Doss v. Clearwater Title Co.*, 551 F.3d 634, 638 (7th Cir. 2008). Furthermore, while *Hayes* made such a statement at the end of the opinion (based on its interpretation of Tennessee law), the case was decided under Fed.Civ.R.P. 12(b)(6), not 12(b)(1). *Hayes* at *1.

**{¶ 54}** In rejecting the view that statutes of repose are "jurisdictional," *Doss* noted the established principle that:

"Jurisdiction, therefore, is not defeated as respondents seem to contend, by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the complaint do

not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction...."

*Doss*. 551 F.3d at 638, quoting *Bell v. Hood*, 327 U.S. 678, 682-683, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

**{¶ 55}** Another federal case that StampTech cites is also inapplicable. *See* StampTech Brief at p. 11-12, discussing *Tuck v. United States*, 2022 WL 833367 (D.Col. Mar. 21, 2022). It is true that in *Tuck*, the issue was brought to the court through a Fed.Civ.R.P. 12(b)(1) motion. *Id.* at *1. However, unlike Ohio common pleas courts, "federal courts are courts of limited jurisdiction," and "courts 'are duty bound to examine facts and law in every lawsuit before them to ensure that they possess subject matter jurisdiction.' " *Id.* at *2, quoting *Wilderness Soc. v. Kane Cty.*, 632 F.3d 1162, 1179, fn.3 (10th Cir. 2011) (Gorsuch, J., concurring). Additionally, "[t]he party invoking federal jurisdiction has the burden of establishing said jurisdiction." *Id.*, citing *Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005). That is not the situation here.

**{¶ 56}** Although the United States is immune from suit based on sovereign immunity, "which precludes federal jurisdiction," the jurisdictional basis in *Tuck* was the Federal Tort Claims Act ("FTCA"), 28 U.S.C. 1346(b)(1), which " 'waives sovereign immunity for certain state law tort claims against the United States.' " *Tuck* at *2, quoting *Garling v. EPA*, 849 F.3d 1289, 1294 (10th Cir. 2017). The issue was whether the claim was time-barred by a Colorado statute of repose, which would mean that the United States would not have waived immunity, causing a lack of federal jurisdiction. *Id.* at *3. Ultimately, the court overruled the motion, finding that the "FTCA preempts the Colorado

statute of repose insofar as it reduces or interferes with the FTCA's timing and administrative provisions." *Id.* at *9.

{¶ 57} Again, *Tuck* is inapplicable. However, even if it were relevant, the court relied solely on the allegations in the complaint. *Id.* at *1. This is the same procedure that would apply in Ohio for motions based on failure to state a claim.

{¶ 58} Another case that StampTech cited is *Angersola v. Radiologic Assocs. of Middletown, P.C.*, Conn. Super. No. MMXCV146012179, 2015 WL 5626267 (Aug. 20, 2015), *rev'd*, 330 Conn. 251, 193 A.3d 520 (2018). StampTech Brief at p. 13.

{¶ 59} *Angersola* involved a wrongful death action brought under Conn.Gen.Stat. 52-555, which allowed recovery for wrongful death but provided that "no action shall be brought to recover such damages and disbursements but within two years from the date of death, and except that no such action may be brought more than five years from the date of the act or omission complained of." 339 Conn. at 255 and fn.1. The defendants moved to dismiss under Conn. Practice Book Sec. 10-30, which allows motions to dismiss based on "(1) lack of jurisdiction over the subject matter; (2) lack of jurisdiction over the person; (3) insufficiency of process; and (4) insufficiency of service of process." *Angersola*, 2015 WL 5626267, *3.

{¶ 60} In contrast to Ohio law, motions based on failure to state a claim in Connecticut are included in a different code section, Conn. Practice Book Sec. 10-39, which is called "Motion to Strike; Grounds." In that situation, courts are restricted to the facts alleged in the complaint and must construe them most favorably to the plaintiff. *Faulkner v. United Techs. Corp., Sikorsky Aircraft Div.*, 240 Conn. 576, 580, 693 A.2d

293 (1997).

**{¶ 61}** After the trial court dismissed the case for lack of jurisdiction, the Supreme Court of Connecticut reversed. It agreed with the lower court that "noncompliance with the repose provision of § 52-555 [the wrongful death statute] deprives a trial court of subject matter jurisdiction over the present action." *Angersola*, 330 Conn. at 264. However, the court also found that the trial court had erred in refusing to let the plaintiff conduct any discovery. *Id.* at 277-278.

**{¶ 62}** The court's jurisdictional ruling was based on the fact that the wrongful death statute created a right that did not exist at common law. *Id.* at 265-269. In this regard, the court noted its prior holding that when " 'a specific time limitation is contained within a statute that creates a right of action that did not exist at common law, then the remedy exists only during the prescribed period and not thereafter.... In such cases, the time limitation is not to be treated as an ordinary statute of limitation ... but rather is a limitation on the [right] itself, and not of the remedy alone.... The courts of Connecticut have repeatedly held that, under such circumstances, the time limitation is a substantive and jurisdictional prerequisite, which may be raised at any time, even by the court sua sponte, and may not be waived.' " *Id.* at 265-266, quoting *Ecker v. Town of W. Hartford*, 205 Conn. 219, 231-232, 530 A.2d 1056 (1987).

**{¶ 63}** After making these comments, the court discussed a recent decision in which it had asked the parties to submit supplemental briefing on whether it should continue to characterize time limits in statutory actions as jurisdictional. *Id.* at 266-267, discussing *Blakely v. Danbury Hosp.*, 323 Conn. 741, 150 A.3d 1109 (2016). The court

explained its reasoning as follows:

> Our request for supplemental briefing in *Blakely* reflects the tension we previously have perceived between our characterization of limitation periods contained within statutorily created rights of action as subject matter jurisdictional and the distinction we repeatedly have drawn "between a trial court's jurisdiction and its authority to act under a particular statute. Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it.... A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it.... Once it is determined that a tribunal has authority or competence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action."

*Angersola,* 330 Conn. at 267, 193 A.3d 520, quoting *Reinke v. Sing*, 328 Conn. 376, 389, 179 A.3d 769 (2018).

{¶ 64} Ultimately, the court applied the doctrine of "legislative acquiescence" and decided there was no reason reconsider how it had treated the repose provision in the wrongful death statute.  This was because the legislature had amended the statute a number of times since the 1987 decision in *Ecker* and had never altered the "conclusion that compliance with the repose period is a jurisdictional prerequisite to suit."  *Id*. at 267-269.

{¶ 65} Unlike Connecticut's Supreme Court, the Supreme Court of Ohio does not

have a similar history of treating a repose provision as a jurisdictional barrier. In addition, Connecticut appears to have made this decision with respect to actions not known at common law. Again, Ohio has not made such distinctions. Instead, the Supreme Court of Ohio has repeatedly expressed the view that "[s]ubject-matter jurisdiction is the power of a court to entertain and adjudicate a particular class of cases." *Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, at ¶ 19. It has also stressed the belief that an explicit statutory removal of jurisdiction is required. *Ruehlman*, 157 Ohio St.3d 296, 2019-Ohio-2845, 136 N.E.3d 436, at ¶ 9; *Ostanek*, 166 Ohio St.3d 1, 2021-Ohio-2319, 181 N.E.3d 1162, at ¶ 29.

{¶ 66} "Ohio courts are not bound by decisions of courts in other states, or even 'rulings on federal statutory or constitutional law made by a federal court other than the United States Supreme Court,' but we are free to consider the persuasiveness of such decisions." *State ex rel. Yost v. Volkswagen Aktiengesellschaft*, 2019-Ohio-5084, 137 N.E.3d 1267, ¶ 30 (10th Dist.), quoting *State v. Burnett*, 93 Ohio St.3d 419, 424, 755 N.E.2d 857 (2001). (Other citations omitted.) For the reasons stated, we are not persuaded by any of the federal or out-of-state decisions that Appellees have cited.

{¶ 67} As indicated, the trial court's decision in *Angersola* was reversed because the court refused to allow discovery. The reversal related to the plaintiff's claim that under the continuous treatment or continuous conduct doctrines, her claim did not arise until the defendants' tortious conduct ceased; at that point, the repose statute would begin to run. *Angersola*, 330 Conn. at 270, 193 A.3d 520. The Supreme Court of Connecticut agreed that these doctrines should apply to statutory causes of action. *Id.* at 271-272.

{¶ 68} In addition, the court stressed that where a jurisdictional issue is intertwined with a case's merits, " 'a court cannot resolve the jurisdictional question without a hearing to evaluate those merits' * * * or 'until the parties complete further discovery or, if necessary [and appropriate], a full trial on the merits has occurred.' "  *Id.* at 278, quoting *Conboy v. State*, 292 Conn. 642, 653, and fn. 16, 974 A.2d 669 (2009).   Consequently, even if we found the reasoning in *Angersola* persuasive, the trial court here should have allowed Everhart to conduct discovery.

{¶ 69} As a further matter, our review of Ohio case law indicates that courts have rendered judgment about statutes of repose by using Civ.R. 12(B)(6) or summary judgment.   *E.g. Antoon*, 148 Ohio St.3d 483, 2016-Ohio-7432, 71 N.E.3d 974, at ¶ 8 (R.C. 2305.113 and 12(B)(6) motion); *Studer v. Volvo Cars of N. Am., L.L.C.*, 11th Dist. Portage No. 2006-P-0020, 2007-Ohio-890, ¶ 5 (R.C. 2305.10(C) and summary judgment motion); *Sedar*, 49 Ohio St.3d at 194, 551 N.E.2d 938 (R.C. 2305.131 and summary judgment motion); *Jones v. Walker Mfg. Co.*, 8th Dist. Cuyahoga No. 97301, 2012-Ohio-1546, ¶ 1-2 (R.C. 2305.10(C) and summary judgment motion); *McClure v. Alexander*, 2d Dist. Greene No. 2007-CA-98, 2008-Ohio-1313, ¶ 7 (R.C. 2305.131 and Civ.R. 12(B)(6) motion); and *Grayson v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga No. 110684, 2022-Ohio-1668, ¶ 5 (R.C. 2305.113 and motion for judgment on the pleadings, described as a " 'belated Civ.R. 12(B)(6) motion' ").   Consequently, these are the correct vehicles for deciding the repose issue, not Civ.R. 12(B)(1).

{¶ 70} Our discussion on this issue is not intended to express an opinion on whether Everhart's complaint fails to state a claim against Appellees or whether summary

judgment should be granted; we are simply indicating that the trial court's method of analysis was incorrect. In this regard, we note that the complaint did not specify dates concerning the Press, other than that Merrick I purchased it as "used" from StampTech in 2013, and that Merrick I sold it to Merrick II in 2014. Complaint at ¶ 11. The complaint further alleged that between 2013 and the date of Everhart's 2017 injury, "Defendants Merrick I, Minster, and Bill's Machine performed various inspections, tests, maintenance, service, and repairs to the subject press." *Id.* at ¶ 43.[4]

{¶ 71} Claims against one or more of these entities may be barred by the statute of repose. However, the trial court refused to allow any discovery (despite Everhart's request) due to its belief that discovery would not affect subject matter jurisdiction. For the reasons stated, the court's analysis was incorrect.

{¶ 72} A further issue is presented based on whether the statute of repose even applies, particularly with respect to StampTech and Bill's Machine. As noted in *Jones*, 8th Dist. Cuyahoga No. 97301, 2012-Ohio-1546, "the courts have found that statutes of repose are inapplicable in cases where a supplier rebuilds or reconditions a product beyond its intended useful life." *Id.* at ¶ 11, citing *Denu v. W. Gear Corp.*, 581 F.Supp. 7

---

[4] StampTech was not mentioned in ¶ 43, but this appears to have been an inadvertent omission, since the other paragraphs in this claim (Count Two, negligence) refer to StampTech in every other paragraph as well as in the heading for Count Two. *See* Complaint at ¶ 42 and 44-49.

(S.D.Ind.1983) (applying Indiana law).[5]   *Jones* offered the further explanation on this point that:

> "We take two points to be clear, though authority is sparse.   The first is that any reconstruction or reconditioning (as distinct from a mere repair— a familiar distinction in other areas of law, *see, e.g., Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961)) which has the effect of lengthening the useful life of a product beyond what was contemplated when the product was first sold starts the statute of repose running anew.   *Denu v. Western Gear Corp.*, 581 F.Supp. 7 (S.D.Ind.1983) (applying Indiana law); *Rollins v. Cherokee Warehouses, Inc.*, 635 F.Supp. 136 (E.D.Tenn.1986); *Fugate v. AAA Machinery & Equipment Co.*, 593 F.Supp. 392 (E.D.Tenn.1984).   Otherwise the statute would create an inefficient incentive to reconstruct or recondition old products rather than build new ones, in order to reduce expected liability costs; for under such a regime a product rebuilt after ten years would be immunized from liability.   The second point is that merely by incorporating a defective component into an old product the incorporator cannot obtain

---

[5] In a recent decision, the Supreme Court of Indiana rejected a request to adopt what it called "a *Denu*-type exception that would restart the ten-year statute of repose when a manufacturer's refurbishment efforts yield a 'new product'." *Estabrook v. Mazak Corp.*, 140 N.E.3d 830, 833 (Ind. 2020)   The court found that "[s]uch an approach would oblige courts to craft a test for assessing when a manufacturer's modification to its product is sufficiently different in degree that the result is a new product, different in kind from its predecessor." *Id.*   The court's refusal was based on the plain meaning of its statute of repose and "because the task is not susceptible of a clear, bright-line legal rule." *Id.* at 833-834. As will be noted, there is a difference of opinion on this point.

the protection from suit that the statute of repose gave the old product. *Black v. Henry Pratt Co.*, 778 F.2d 1278, 1282-83 (7th Cir.1985) (applying Indiana law); *Hinds v. CompAir Kellogg*, 776 F.Supp. 1102, 1107-08 (E.D.Va.1991), *aff 'd without opinion*, 961 F.2d 211 (4th Cir.1992) (ditto). Here, for example, Gallo made the improvements to the Taylor forklift more than ten years after its original sale. Gallo could not by this fortuity obtain immunity from products liability should its components prove defective and as a result cause an injury to someone. *Id.* at 331."

*Jones*, 8th Dist. Cuyahoga No. 97301, 2012-Ohio-1546, at ¶ 11, quoting *Richardson v. Gallo Equip. Co.*, 990 F.2d 330, 331 (7th Cir.1993).

**{¶ 73}** In the trial court, StampTech and Bill's Machine submitted affidavits denying that they had substantially rebuilt, remanufactured, or reconditioned the Press, even though they had worked on it. Amato Aff. at ¶ 5; Purtee Aff. at ¶ 6. These affidavits appear to have been attempts to avoid the principle mentioned in *Jones*. However, the trial court declined to let Everhart conduct any discovery, which precludes appellate resolution of this issue.

**{¶ 74}** Some courts have rejected the rebuild or recondition argument as it concerns the liability of the original manufacturer, unless "the machinery at issue was reacquired by the manufacturer, completely reconditioned, and then resold to new customers.' *Butchkosky v. Enstrom Helicopter Corp.*, 855 F.Supp. 1251, 1255 (S.D.Fla.1993). However, in *Butchkosky*, the court noted that:

The statute of repose precludes a manufacturer's liability for a *design*

*flaw* in the original product, but the *repair* of the critical part provides an injured party with a cause of action against the party who performed the repair or who designed the replacement part if that part is different in design from the original. The repairing party might be the manufacturer or a third party. If it is the manufacturer, the suit must be based on the unsafe repair or on the design of the re-designed replacement component - not on a design flaw in the manufacturing process of the original multi-component product or the original component that was replaced.

(Emphasis sic.) *Id.*

{¶ 75} Some courts "have employed a two-part test to determine whether the statute of repose should recommence when a product has been refurbished. First, courts must determine whether the refurbishing resulted in a "new product." To determine whether the product should be considered 'new,' courts must inquire whether the refurbishing has lengthened the product's useful life beyond what was contemplated when the product was first sold. Second, if the product is considered 'new,' the suit will still be time barred unless the refurbishing was defective and proximately caused the injury." *Divis v. Clarklift of Nebraska, Inc.*, 256 Neb. 384, 389, 590 N.W.2d 696 (1999).

{¶ 76} The Supreme Court of Ohio has also said that "[a]lthough R.C. 2305.10(C) may prevent some suits against product manufacturers, in many situations, an injured party may be able to seek recovery against other parties. For example, if an employer modifies a machine after it is acquired, the employer could be liable for the consequences of a negligent alteration." *Groch*, 117 Ohio St.3d 192, 2008-Ohio-546, 883 N.E.2d 377,

at ¶ 152. Logic dictates that this situation would also include modifications or changes by other third parties. Again, since the trial court did not allow discovery or exploration of the matters asserted in the affidavits that were filed, a decision cannot be made based on the record as it currently exists.

{¶ 77} In his brief, Everhart also contends that the trial court erred in merging his product liability claims with the negligence claims against Minster, StampTech, and Bill's Machine for failing to competently maintain, inspect, and service the Press. The theory here is that the statute of repose in R.C. 2305.10(C) does not apply to the negligence claims that were dismissed. In response, Appellees argue that they are manufacturers or suppliers under the OPLA, and that all common law product liability claims are barred. Because the trial court erred in dismissing the complaint under Civ.R. 12(B)(1), we need not address this point in detail.

{¶ 78} We do note that R.C. 2307.71(B) provides that "Sections 2307.71 to 2307.80 of the Revised Code are intended to abrogate all common law product liability claims or causes of action." This "preemption provision extinguishes any common-law claim that, as pled, actually meets the statutory definition of a product liability claim." *Volovetz v. Tremco Barrier Sols., Inc.*, 2016-Ohio-7707, 74 N.E.3d 743, ¶ 33 (10th Dist.), citing *Evans v. Hanger Prosthetics & Orthotics, Inc.*, 735 F.Supp.2d 785, 796 (N.D.Ohio 2010), and *Miles v. Raymond Corp.*, 612 F.Supp.2d 913, 918 (N.D.Ohio 2009). "The essential nature of the substantive allegations of the plaintiff's claim, not the artificial label attached to the claim, determines the claim's true nature." *Id.*, citing *Evans* at 796 and *Miles* at 921.

**{¶ 79}** Under R.C. 2307.71(A)(13):

"Product liability claim" means a claim or cause of action that is asserted in a civil action pursuant to sections 2307.71 to 2307.80 of the Revised Code and that seeks to recover compensatory damages from a manufacturer or supplier for death, physical injury to person, emotional distress, or physical damage to property other than the product in question, that allegedly arose from any of the following:

(a) The design, formulation, production, construction, creation, assembly, rebuilding, testing, or marketing of that product;

(b) Any warning or instruction, or lack of warning or instruction, associated with that product;

(c) Any failure of that product to conform to any relevant representation or warranty.

**{¶ 80}** If StampTech and Bill's Machine did not "rebuild" the Press (as they contend), it is hard to see how Everhart's claim fits within the statutory definition of a products liability claim. It may be that the OPLA applies, to the extent that liability is premised on warnings, failure to warn, failure to conform to a representation or warranty, or marketing. Different duties can also arise under the OPLA depending on whether an entity is a "supplier" or a "manufacturer," or whether a "supplier is placed into the 'shoes' of the manufacturer." *Parker v. ACE Hardware Corp.*, 2018-Ohio-320, 104 N.E.3d 298, ¶ 43 (2d Dist.) (Tucker, J., concurring in part and dissenting in part). At this point, we lack a sufficient record to evaluate these issues. Consequently, we express no opinions,

other than noting these possibilities.

**{¶ 81}** Based on the preceding discussion, the first assignment of error is sustained.

### III.  Failure to Allow Discovery

**{¶ 82}** Everhart's second assignment of error states that:

The Trial Court Committed an Abuse of Discretion by Failing to Afford Plaintiff-Appellant an Opportunity to Conduct Discovery Into the Fact-Intensive Issues That Had Been Raised in the Defense Motions.

**{¶ 83}** Under this assignment of error, Everhart contends that the trial court abused its discretion by preventing him from conducting discovery.  The parties agree that discovery issues are reviewed for abuse of discretion.  This is correct.  *E.g., Mauzy v. Kelly Servs., Inc.*, 75 Ohio St.3d 578, 592, 664 N.E.2d 1272 (1996).

**{¶ 84}** An abuse of discretion " 'implies that the court's attitude is unreasonable, arbitrary or unconscionable.' "  (Citations omitted.)  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).  "[M]ost instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary."  *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).  "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.*

**{¶ 85}** According to Appellees, the trial court properly refused to allow discovery

because Civ.R. 12(B) does not contain a requirement that discovery be conducted before a complaint is dismissed. They also contend that Everhart failed to specify exactly what discovery was needed.

**{¶ 86}** We have already indicated that the trial court's disposition of the case under Civ.R. 12(B)(1) was incorrect and that Everhart should have been allowed to pursue discovery. Given these conclusions, the trial court's statement that discovery would have made no difference was not based on sound reasoning. Consequently, Everhart's second assignment of error has merit and is sustained.

## IV. Conclusion

**{¶ 87}** Both of Everhart's assignments of error having been sustained, the judgment of the trial court is reversed, and this cause is remanded for further proceedings.

. . . . . . . . . . . . .

TUCKER, P.J. and LEWIS, J., concur.

Copies sent to:

David R. Grant
Frank L. Gallucci, III
Paul W. Flowers
Louis E. Grube
Melissa A. Ghrist
John A. Smalley
Daniel F. Gourash
Jeffrey S. Moeller

Patricia J. Trombetta
Thomas F. Glassman
Christopher C. Koehler
Lindsey Carr Siegler
Douglas S. Jenks
David M. Rickert
Edward T. Saadi
Merrick Manufacturing LLC c/o Christy Bugert
Hon. Dennis J. Adkins